LAYTON *v*. CENTRAL STATES LEAD & ZINC COMPANY.

Opinion delivered February 7, 1921.

1. PLEADING—EXHIBITS.—A bill in equity is not demurrable because the allegations therein are broader than the subject-matter covered by exhibits thereto, as the exhibits could not control or limit proper allegations relating to matters not covered by the exhibits.

2. CORPORATIONS—PROMOTERS' CONTRACT.—Under a bill alleging that a certain contract was made on behalf of a proposed corporation by its promoters, part of the consideration of which was the sale of certain stock in the corporation, which was guaranteed to be worth $2,000, and that the corporation, with knowledge of such contract, adopted the same and accepted the benefit thereof, *held* that the corporation was bound by the contract, including the guaranty.

3. CORPORATIONS—ADOPTION OF PROMOTERS' CONTRACTS.—A corporation may adopt contracts made for it by its promoters in advance of organization as effectually as if made by it after organization, and after accepting the benefits of such contracts can not repudiate the accompanying burdens and obligations.

4. FRAUDS, STATUTE OF—PROMOTERS' CONTRACT.—A contract on behalf of a prospective corporation, made for its benefit by promoters, though not in writing, is not within the statute of frauds as being a contract to answer for the debt, default or miscarriage of another, since, on its adoption by the corporation, it became, *in toto*, an original undertaking of the corporation.

Appeal from Marion Chancery Court; *B. F. Mc-Mahan,* Chancellor; reversed.

*J. C. Floyd,* for appellant.

The appellee adopted the contract made by the promoters, Stanfield and Harrison, with plaintiff and are bound by it. The contract was made on behalf of the corporation by its promoters and the corporation after its organization, and with full knowledge of all the facts

accepted its benefits and took them *cum onere,* and it may be enforced against the corporation. Clark on Contracts, pp. 133-4, § 17; 44 Ark. 383; 37 *Id.* 164; 86 Tex. 35; 7 R. C. L., §§ 60-1-2; Clephane on Bus. Corp., chap. 4, p. 29; § 48; 91 Ark. 367; 79 *Id.* 273; 96 S. W. 277; 121 *Id.* 293. The verbal agreement modifying the written lease contract is not within the statute of frauds. 4 L. R. A. (N. S.), pp. 980-1, and note. *Stearns* v. *Hall,* 9 Cush. 31; 415 Wis. 38; 74 Minn. 224; 77 N. W. 34. The bill states a cause of action, and it was error to sustain the demurrer.

*Williams & Seawell,* for appellee.

While the authorities cited by appellant state clearly the general principles governing the adoption by a corporation of a contract originally made in advance for it by promoters, yet there are certain well-defined qualifications and exceptions which are supported by authorities. 39 So. Rep. 712; 18 N. E. 868; 112 *Id.* 112. See, also, 253 Fed. 340, 351; 14 C. J., § 860; 16 Arizona 485; 102 N. E. 599; 42 Okla. 440; 14 C. J., § 293 (4); 161 Fed. 874; 37 Ark. 164; 44 *Id.* 383; 87 S. W. 210; 37 N. E. 549. There is a radical difference between a promise made on behalf of the future corporation in the contract itself, the benefits it has accepted, and the promise in a previous contract to pay for services in procuring the latter to be made. Elliott on Private Corp., § 61; 24 S. W. 795. Before a corporation becomes bound by adoption or ratification of a contract made by promoters for it, there is a qualification that it must have been such as it could have originally made itself. 14 C. J., § 291 (2); 123 Ark. 575. It is alleged that appellee is a corporation organized and incorporated by the laws of Arizona, and its charter powers are governed by the Constitution and laws of that State. 71 Ark. 379; 96 *Id.* 594. Under the laws of Arizona no corporation shall issue stock except to *bona fide* subscribers to its stock or their assignees; nor shall issue any bond or other obligation for payment of money except for money or property received or labor done. Const. Ariz., art. 14, § 6. The rule of this

court with reference to stock subscriptions is applicable. 126 Ark. 400. The contract here is against public policy. 105 N. W. 578; 148 *Id.* 47; 149 *Id.* 1156; 204 *Id.* 408. On the whole case the decree is right, and the demurrer was properly sustained, but, if error was committed and the complaint does state a cause of action, appellee prays leave to answer.

HUMPHREYS, J. This is an appeal from a decree of the chancery court of Marion County, sustaining a demurrer to and dismissing the amended bill of appellant against the Central States Lead and Zinc Company, a foreign corporation duly organized under the laws of the State of Arizona and doing business in the State of Arkansas. The sole question for determination is whether the facts alleged in the amended bill constitute a cause of action against said corporation. The petition, in substance, alleged that A. N. Stanfield and C. H. Harrison were promoters of the Central States Lead and Zinc Company, and for its benefit secured an option contract from appellant in consideration of the payment of $500 cash and $7,500 within sixty days, wherein it was agreed, in writing, with A. N. Stanfield, for himself and his associates, that, upon payment by him, his heirs, successors or assigns, of a total sum aggregating $8,000, appellant would transfer to him, his heirs, successors or assigns, all his interest in a mining lease dated the first day of June, 1916, from the Monkey Hill Mining and Milling Company to Zimmerman Engineering Company, embracing certain lands in Marion County, with supplemental contract relating thereto, dated March 14, 1917, and also supplemental contract modifying the terms of the original lease so as to extend the time and reduce the royalties, executed on December 24, 1917, by the said Monkey Hill Mining and Milling Company directly to him; that the Central States Lead and Zinc Company was being organized for the express purpose of taking over said leasehold contracts held by appellant; that, pending the organization, said promoters, being desirous

of obtaining the immediate assignment of the leasehold contracts and the possession of the property to the said A. N. Stanfield for the Central States Lead and Zinc Company, verbally agreed with appellant for a modification of the option contract so as to pay him $6,000 in cash and to secure him in the payment of the remaining $2,000 of unpaid purchase money by issuing to him a certificate of stock in the contemplated corporation for $4,000, with an express understanding on the part of said promoters to guarantee the immediate sale of said stock for $2,000 upon the completion of the organization of the said Central States Lead and Zinc Company; that, pursuant to the verbal agreement, appellant, on the 11th day of April, 1918, transferred his leasehold estate and supplemental contracts relating thereto in said property to the said A. N. Stanfield for the use and benefit of said Central States Lead and Zinc Company, and placed said A. N. Stanfield, his associates and the Central States Lead and Zinc Company in possession of said leasehold estate; that, at the time appellant transferred the mining lease and supplemental contracts aforesaid to A. N. Stanfield, said appellant, as a part of the same transaction, undertook to procure from the Monkey Hill Mining and Milling Company a new mining lease, embodying the terms and conditions of the original lease and supplemental contract thereto; that, after the organization of the Central States Lead and Zinc Company was completed, A. N. Stanfield, on the 29th day of May, 1918, transferred said leasehold estate, including the mining leases and supplemental contracts relating thereto, to the Central States Lead and Zinc Company; that, pursuant to agreement, appellant, on July 16, 1918, procured a lease embodying the terms and conditions of the original lease and supplemental contracts thereto from the Monkey Hill Mining and Milling Company directly to the said Central States Lead and Zinc Company; that said corporation, Central States Lead and Zinc Company, through its officers and agents, accepted said transfer of said mining lease and supplemental contracts

aforesaid, and mining property thereto belonging and new lease aforesaid and possession of said mining property, with full knowledge of the option contract wherein said A. N. Stanfield had agreed and contracted to pay $8,000 for said property, and with full knowledge of the subsequent agreement of A. N. Stanfield and C. H. Harrison to guarantee the sale of the $4,000 stock issued to appellant at and for the sum of $2,000 in cash immediately upon the completion of the organization of said corporation, so as to enable said appellant to realize the full sum of $8,000 out of the sale aforesaid; that it adopted and ratified said contract and agreement as its own by issuing its certificate of stock to him for $4,000 as security for $2,000, balance of the purchase money for the leasehold estate, and by accepting and receiving the full benefits therefrom and the possession thereof; the said A. N. Stanfield and C. H. Harrison and Central States Lead and Zinc Company, in the breach of said contract, failed and refused to place on the market and sell the $4,000 in stock, held by appellant as security for his said debt of $2,000, balance due under his contract with A. N. Stanfield upon the sale and transfer of the aforesaid property; that, on the 28th day of September, 1918, appellant attached the $4,000 certificate of stock aforesaid to a draft for $2,000 and demanded payment thereof from the said C. H. Harrison and Central States Lead and Zinc Company, but payment of said draft was refused; that appellant now tenders in court the said certificate of stock for $4,000, assigned in blank to appellee and the promoters, and to each of them, and prays judgment for the sum of $2,000 against them.

The option contract, original lease and supplemental contracts in relation thereto, the assignment thereof to A. N. Stanfield and his assignment thereof to appellee, the new lease from the Monkey Hill Mining and Milling Company directly to appellee, letters verifying the oral agreement changing the manner of payment of the purchase money for the property and the $4,000 certificate of stock attached to the draft aforesaid, were attached

as exhibits to the complaint. None of these writings connected the Central States Lead and Zinc Company with the transaction except the lease made directly to it by the Monkey Hill Mining and Milling Company, the transfer of the leases and supplemental contracts in relation thereto, the stock certificate and the reference to said corporation in the letters. The contents of the exhibits are correctly alleged in the bill, and, there being no discrepancy or conflict between them and said allegations, it is unnecessary to apply the principle in equity that the allegations of the bill are controlled by the exhibits, as suggested by appellee. It is true the allegations in the bill are much broader than the subject-matter covered by the exhibits, but the additional allegations in the bill were proper as tending to render appellee responsible by adoption of the contract between appellant and the promoters of appellee. The exhibits could not control or limit proper allegations relating to matters not covered by the exhibits.

The chancery court sustained the demurrer to the bill upon the theory that it alleged a personal guaranty of the sale of the $4,000 certificate of stock for $2,000 by A. N. Stanfield and C. H. Harrison, which contract of guaranty was not made for appellee corporation or with the express intention that it should become bound thereon; and upon the further theory that the contract was void under the statute of frauds as being an attempt to hold appellee liable for the debt of said promoters on a parol contract. The allegations of the bill are of greater breadth and scope than this. They are, in substance, to the effect that the contract was made for the corporation and would be assumed by it. The purchase price agreed upon in the option contract for the Monkey Hill leasehold was $8,000. The promoters of appellee corporation verbally agreed with appellant that, if he would forbear $2,000 of the purchase price, appellee, when organized, would issue him $4,000 of its stock to secure the payment thereof, and they would guarantee the immediate sale thereof for not less than $2,000. With a

full knowledge of the contract, it thereafter accepted the assignment of the original lease and subsequent contracts in relation thereto, the possession of the property, the new and direct lease from the Monkey Hill Mining & Milling Company to it, and issued its certificate of stock for $4,000 to appellant, as security for the unpaid purchase money of $2,000. Under these allegations, the guaranty to convert the stock into money became an integral part of the contract. The allegations are that appellee adopted the entire contract, not simply a part thereof. We think the allegations of the bill bring it within the general rule of law that a corporation may adopt contracts made for it by its promoters in advance of organization as effectually as if made in the first instance by it after organization, and within the rule that corporations accepting the benefits of such contracts can not repudiate the accompanying burdens and obligations. Clark on Contracts, § 47, pp. 133, 134; R. C. L., vol. 7, §§ 6061-62; *Bloom* v. *Home Insurance Agency,* 91 Ark. 367.

We do not think the contract void under the statute of frauds, as seeking to charge appellee upon the debt of A. N. Stanfield and C. H. Harrison. The allegations are, in substance, that, as promoters for appellee corporation, they entered into a written option contract for a mining leasehold estate in Marion County for a consideration of $8,000, $500 of which was to be paid in cash and $7,500 upon delivery of the lease and leasehold estate to said appellee. Subsequently, and by verbal agreement, in order to obtain the immediate assignment of the leases and possession of the property, it was agreed that $6,000 should be paid in cash and that appellee would forbear the immediate payment of the balance of the purchase price of $2,000 upon condition that appellee, when organized, would assign $4,000 of its stock to appellant as collateral to secure the payment of the unpaid purchase money with a guaranty on the part of the promoters that the stock would be immediately sold for not less than $2,000 to pay said appellant the balance

of the purchase money; that, with full knowledge of this contract, appellee, after organization, accepted the leases, possession of the property, and issued the certificate of stock for $4,000, pursuant to said understanding. Treating these allegations as true, the effect of the acceptance of the leases and property by appellee was an adoption by it of the contract *in toto,* including the guaranty to sell the stock for enough money to pay 'the balance on the purchase price for said property. By such adoption the contract *in toto* became an original undertaking on behalf of appellee and is not void under the statute of frauds as an undertaking to answer for the debt, default or miscarriage of another.

We are of opinion that the bill states a cause of action, and, for the error in sustaining the demurrer thereto and dismissing it for want of equity, the decree is reversed and the cause remanded with leave to appellee to answer, and for proceedings not inconsistent with this opinion.