[Civ. No. 8767. Second Appellate District, Division Two.—October 30, 1934.]

WM. G. BONELLI et al., Respondents, v. W. E. CONRAD, Appellant.

McManus & Caldwell for Appellant.

Hal Hughes and Maurice J. O'Brien for Respondents.

WILLIS, J., *pro tem.*—This is an action to recover for attorneys' services, tried before a jury which rendered a verdict in favor of plaintiffs. From the judgment entered thereon defendant appeals.

Plaintiffs were partners in the practice of the law from January 1, 1929, until the first of the year 1932. On January 13, 1930, plaintiff Bonelli and one Mark S. Feiler, also an attorney, executed a written contract with defendant wherein it was provided that in consideration of the attorneys procuring for appellant a change of zoning from zone "B" to zone "C" of the zone area in Los Angeles in which certain of appellant's property then was located, he, appellant, would pay to the attorneys the sum of $5,000 at the time when such zoning change went into effect, otherwise appellant was obligated to pay them nothing. On September 19, 1930, appellant executed a document in effect declaring that it was his understanding that he was to pay the attorneys above named the sum of $5,000 in consideration of their procuring a rezoning of the "southeasterly corner of Sunset Boulevard and Fairfax Avenue, Los Angeles . . . from the present apartment house zone to a commercial zone, so as to permit construction on the above premises of business property", this agreement to be in force and effect for a period of 90 days from its date. After the expiration of that period, and on February 11, 1931, Bonelli and Miller executed with appellant a new contract wherein it was recited that appellant desired to employ respondents to do the necessary legal work "in connection with the obtaining of special permits for business development of the following described property or placing the same in Zone 'C' by valid ordinance of the city of Los Angeles". Then follows a description of the property, being the same as described in the previous agreements, and the covenant: "Now there-

fore, the first party does hereby employ the second party for the purposes hereinabove set forth and agrees to pay the sum of Five Thousand ($5,000.00) Dollars, and the second parties accept such employment and the sum hereinabove set forth as consideration for their services, which said sum is to be paid upon demand to said second parties by the first party when the above described property has been placed in Zone 'C' by valid ordinance or special permit for business uses of the city of Los Angeles. It is understood and agreed that this employment shall be for ninety (90) days from the date hereof.'' Prior to the expiration of the 90 days' period, and on May 9, 1931, a renewal or extension of this last agreement was executed in the form of a duplication thereof in words and figures, except as to date and period of existence, which was made to read sixty (60) days from and after May 9, 1931. On June 27, 1931, an ordinance of the city of Los Angeles was duly adopted and approved, wherein the city council granted appellant a ''conditional variance from the provisions'' of the zoning ordinance, under section 4 thereof, ''so far as variance is necessary to erect a business building'' on the property of appellant at the southeasterly corner of Sunset Boulevard and Fairfax Avenue, provided (a) that the building conform substantially to sketch submitted by appellant; (b) that the plans for the building be submitted to and approved by the city planning committee prior to the issuance of building permits; (c) that the building permits be applied for within six months of the date of this ordinance, and (d) that the department of building and safety issue the necessary permits upon the publication of this ordinance.

On July 29, 1931, respondents made written demand on appellant for payment of the $5,000, reciting in their letter ''that the ordinance granting a special permit for business uses on your property . . . will become effective as a valid ordinance on midnight of July 29, 1931'', and that ''under the terms of our agreement of May 9, 1931, the sum of $5,000.00 immediately becomes due and payable upon demand when such ordinance becomes effective''. To this letter appellant replied in writing on August 1, 1931, stating: ''It is my desire and aim to pay you your $5,000.00 at the very earliest moment possible. I realize just how hard you worked on that zoning, and knowing of your efforts was

the main reason I kept extending the time, in order for you to complete your job. . . . I want to assure you, this obligation will be met at the very earliest possible moment I can get hold of any part of this amount, and I am putting forth every possible effort to raise same."

On October 6, 1931, respondents began this action by filing their complaint, wherein they set forth three causes of action, viz.: (1) for $5,000 upon a *quantum meruit;* (2) for $5,000 upon account stated, and (3) for $5,000 upon the contract of May 9, 1931. Appellant answered denying specifically the conventional allegations of the first and second causes, and as to the third cause admitted the signing of the contract set forth but alleged in effect that it was procured by false and fraudulent representations and by exercise of undue influence, and that at the time the contract was entered into respondents were employed as his attorneys to cause his property to be placed in zone "C", and that respondents have failed so to do, and that the work done by respondents is of no avail or value to appellant, and that the sum of $5,000, stated in the contract, is in excess of the fair, reasonable value of any services rendered or performed by respondents pursuant to said contract.

At the trial before a jury appellant required an election as to the cause of action to be relied upon by respondents, and thereupon the court, with the consent of respondents, eliminated the first cause of action from the case, and trial proceeded on the causes for account stated and breach of the contract of May 9, 1931. At the close of trial the court denied appellant's motion for an instructed verdict on the account stated cause, and also on the breach of contract clause, and submitted both causes to the jury under instructions accompanied by two interrogatories, which were the outgrowth of and predicated on two important questions pressed at the trial by appellant. The first of these had reference to the meaning of or construction to be placed on the written contract, appellant contending that it was intended to mean, and that he understood it to mean, that respondents were obligated to procure a rezoning from "B" zone to "C" zone, while respondents claimed it meant and was understood by all parties to mean that they were to procure either a rezoning from "B" to "C", or a special

permit for business development of appellant's property. So the first interrogatory required the jury to answer the question: "Do you find from all the evidence, under the instructions of the court, that the parties, at the time of entering into the contract of May 9, intended and understood the contract to mean that the services required of the plaintiffs would be fully performed if the plaintiffs procured a special permit, and that such special permit was finally procured in accordance with such understanding?" To this the jury answered, "yes". The second of these questions arose out of the cause of action on account stated, and because the validity of the contract was attacked, respondents successfully urged the retention in the case of the cause of action on account stated, to be fallen back upon for relief in case the jury should find that respondents had not performed the contract as they might interpret it, or that the contract was invalid by reason of undue influence in its procurement while respondents were occupying the status of attorneys for appellant. So the second interrogatory required the jury to answer this question: "Do you find, under the evidence in this case and the instructions of the court, that the defendant, upon receipt of the letter informing him of the services which had been performed by the plaintiffs, and demanding payment of the $5,000.00 therefor, with full knowledge of the services which had been performed by the plaintiffs, and of the results accomplished thereby, agreed to make such payment with such full understanding of the facts?" To this the jury answered "yes", and with their answers rendered their verdict in favor of plaintiffs for the sum of $5,000.

These answers to these questions, considered in connection with the verdict, make it quite clear that the jury had resolved the issue of the meaning and understanding by the parties of the contract in respondents' favor, and had based its verdict on the third cause of action.

■ The foregoing statement appears necessary to properly approach and dispose of appellant's propositions as set forth in his brief herein. His first contention is that the evidence showed that the written contract had not been complied with; and to support that claim he argues that there is an ambiguity in the contract in respect to whether respondents were to obtain a change from zone "B" to

zone "C" or to obtain a special permit for business development of appellant's property, and that under familiar rules of construction the contract should have been construed so as to require a rezoning from "B" to "C" before respondents would become entitled to the agreed compensation. This issue was fully tried and submitted to the jury under appropriate instructions, and by its verdict the issue was decided against appellant's contention. That there is substantial and convincing evidence to support the implied finding of the jury is manifest in the record.

The first contract of January 13, 1930, provided that a rezoning from "B" to "C" zone was to be obtained before the compensation would be earned. On September 19, 1930, appellant modified this agreement by his declaration of understanding that he was to pay the $5,000 in consideration of the attorneys procuring a rezoning of his corner property from the present apartment house zone (which was "B" zone) to a commercial zone ("C"), so as to permit construction on the premises of business property, and this new employment was limited in time to 90 days from that date. On February 11, 1931, the contract here involved was first executed, being renewed on May 9, 1931. By its terms appellant employed respondents to obtain special permits for business development of his corner property or placing it in zone "C". In the clause providing for time of payment an uncertainty appears, owing to the arrangement of words and clauses therein, in the following quoted portion: "Which said sum is to be paid upon demand . . . when the above described property had been placed in zone 'C' by valid ordinance or special permit for business uses of the city of Los Angeles". Appellant contends that this must be construed to require a placing of property in zone "C" by ordinance before he became obligated to pay.

The history of the transactions and the language of the contract, taken into consideration with the meaning of the terms "zones" and "special permits" and "conditional variance", all tend to support the jury's implied finding as to the intent and understanding of the parties to the contract, and fully sustains their affirmative answer to the interrogatory submitted to them on that subject. Appellant testified quite positively that he wanted a "spot zone" for his property. It is clear that is precisely what he received

by virtue of the ordinance which respondents procured for his benefit. This ordinance terms the isolation or exemption of parcels of property in an established zone from the general restrictions of the particular zone as a "variance" from its provisions. The parties in their contract described it as "special permit for business development". In common business parlance this same official act is called "spot zoning". It simply means that a parcel or "spot" in an established zone is excepted from its restrictions and released to other uses, permitted under another zone, as distinguished from a rezoning of the entire zone area, or from the conversion of one zone into another zone by designation of descriptive letter.

Appellant's second proposition is based on the claim that the undisputed evidence showed that at the time the contract sued upon was executed the relationship of attorney and client existed between respondents and appellant, and that therefore the burden was cast upon respondents to show by extrinsic evidence that the client acted with full knowledge of all the facts and understood their effect in signing the contract, and that the dealing was fair and just and the client fully advised. This issue of relationship was submitted to the jury under proper instructions and their implied finding was contrary to appellant's contention. The evidence fully supports that finding. The evidence showed that the contract of January 13, 1930, as modified and as limited in duration of term by that of September 19, 1930, had expired on December 19, 1930, and the attorneys Bonelli and Feiler had ceased all work thereunder. It was not until February 11, 1931, that the new contract with respondents, one of whom was a new party, was entered into after negotiations. In the absence of proof of employment after December 19, 1930, it is clear that the relationship between Bonelli and Feiler as attorneys, and appellant as client terminated on the date of expiration of their previous employment, and in entering into the contract of February 11, 1931, which was in turn extended by that of May 9, 1931, respondents would be treating with appellant as strangers.

The presumption against validity of a contract entered into by parties under the relationship of attorney and client does not attach to a contract by which the relation is originally created and the compensation of the attorney fixed. In agreeing upon terms of such a contract the

parties deal at arm's length. (*Cooley* v. *Miller & Lux*, 156 Cal. 510, 524 [105 Pac. 981]; *Hicks* v. *Drew*, 117 Cal. 305 [49 Pac. 189]; *Boardman* v. *Crittenden*, 52 Cal. App. 438, 450 [198 Pac. 1020].)

█ The third and fourth propositions advanced by appellant are based on the trial court's submission to the jury's consideration of the second cause of action, founded on account stated, the ground of error assigned being that this was a violation of the established rule that an account stated cannot be based upon the same demand as is involved in an express contract. Appellant cites the case of *Bennett* v. *Potter*, 180 Cal. 736 [183 Pac. 156], upon this proposition. That case is not in point on the facts, as therein the sole evidence of account stated consisted of testimony of conversations of the parties concerning compensation, between whom a contract in writing existed by which compensation was fixed. The court properly said: "To allow a written contract to be thus altered by an oral statement of account, or by any statement not agreed to in writing by the debtor, would violate the rule of the code that 'a contract in writing may be altered by a contract in writing, or by an executed oral agreement, but not otherwise'." Appellant also cites the case of *Rio Linda Poultry Farms* v. *Fredericksen*, 121 Cal. App. 433 [9 Pac. (2d) 262], wherein the court, following the language of *Bennett* v. *Potter, supra*, stated: "It is . not every debt which can form the basis of an account stated or an action thereon. It cannot become a substitute for an action of debt upon a specialty, such as a promissory note. In such a case no subsequent statement of the amount due thereon, although agreed to by the payer, can supersede the special promise so as to form the basis of an action as upon an account stated to recover the original debt. The written promise being higher evidence of the debt and the debtor being already bound thereby, there could be no necessity for a resort to a subsequent statement and promise to pay."

In the instant case appellant had attacked the validity of the written contract of employment and sought to have it declared invalid. If he had succeeded in that effort the effect would have been to eliminate from existence any written contract between the parties. In that event a new and different contract founded on the letter of July 29, 1931, and the answer thereto of August 1, 1931, and herein pleaded

in the conventional form of account stated, would have become available as a foundation for recovery of the amount agreed upon by such subsequent contract. Under this state of the case the lower court did not err in submitting the account stated cause of action to the jury under the instructions given accompanied by the two interrogatories. ■ By its answers and verdict the jury found that the written contract was valid and that $5,000 was the agreed compensation earned thereunder. The direct effect of this finding was to render harmless to appellant the submission of the other cause of action, and the evidence supporting the cause of action for account stated became pertinent probative matter tending to sustain the jury's finding that appellant understood the written contract to mean that upon receiving a special permit for him respondents would have earned the agreed compensation, as contended for by respondents under the third cause of action.

The fifth proposition relates to the giving and refusing of instructions. ■ The court did not err in refusing to instruct the jury that the undisputed evidence showed that the contract in question was entered into while the relationship of attorney and client existed. This was a question of fact in issue before the jury, and the court properly refrained from invading its peculiar province. ■ As to the portions of instruction number 1, proposed by appellant, which were stricken and not given by the court, it is clear no error can be predicated thereon. The portions stricken were argumentative and too closely allied to instructing on facts to be a proper subject of instructions by the court, and were all based on the assumption that the evidence of the relationship between the parties, at the time of contracting, was undisputed. The same may be said of proposed instruction number 2, refused by the court, which clearly was founded on the assumption as a fact that the contract sued upon was entered into during the existence of the relationship of attorney and client. The instructions as given by the court as a whole and in the several parts thereof correctly stated the law applicable to the peculiar character and features of the case, and therein the rights of appellant were effectively safeguarded.

Judgment affirmed.

Stephens, P. J., and Desmond, J., concurred.