[Civ. No. 15712.   First Dist., Div. One.   Feb. 26, 1954.]

FLOYD B. STONE et al., Appellants, v. KENNETH M. RYALS, Respondent.

Thelen, Marrin, Johnson & Bridges for Appellants.

A. Brooks Berlin and Alvin A. Lobree for Respondent.

BRAY, J.—In an action for contribution between former partners of a dissolved partnership, plaintiffs appeal from the judgment in favor of defendant.

## QUESTIONS PRESENTED

1. Primarily,—whether on dissolution plaintiffs assumed the obligations of a certain contract. 2. Correctness of the findings.

(A companion case instituted by defendant to reform the agreement of dissolution was consolidated and tried with this case. The court found against defendant in that case. No appeal was taken.)

## FACTS

For some time prior to September 30, 1948, the parties were partners doing business under the name of Stone-Ryals Electric and Manufacturing Company. Their business was making welding equipment, making and installing crane and hoisting equipment, and doing electrical wiring and other electrical contracting work. On January 28, 1946, a written contract was entered into between the partnership and Victor Equipment Company for the manufacture of certain welding equipment, to be resold by the latter to Mission Appliance Corporation. Among the specifications in the contract were requirements that the equipment meet certain tests. The purchase price was $20,350, payable on acceptance by Mission. The final delivery of equipment was March 19, 1947. The equipment was of a special nature and the tests could not be made at the factory. It was understood by all that additional work might have to be done on the equipment after delivery to make it meet specifications. An exchange of letters took place between the partnership, Mission and Victor, in which it was agreed that the partnership guaranteed the performance of the equipment, and if it did not give satisfactory performance as specified, it would be taken back and the purchase price refunded. The final payment was made in December. No tests had yet been made. The first tests were made March 15, 1948, which, by coincidence, was about the date when the partners commenced negotiating between themselves for a dissolution of the partnership. A dissolution agreement was executed dated December 9th, effective as of September 30, 1948. The equipment did not meet specifications and after considerable work on it by the partnership prior to dissolution and by plaintiffs after dissolution, Victor demanded the return of the purchase price. Without defendant's knowledge or consent. plaintiffs about December 8th returned the purchase price, partly in cash and partly by a promissory note of plaintiffs and received

from Victor a release in favor of both plaintiffs and defendant, and the now dissolved partnership.

Plaintiffs contend that the partnership guaranty to Victor was an absolute one and therefore was a definite obligation of the partnership at the time of the dissolution, entitling plaintiffs to contribution. ▨ Defendant contends that on dissolution plaintiffs took over the welding end of the business while defendant took over the electrical end; that each party was to bear the losses for jobs in process in the respective divisions; that the obligation to refund was not an absolute obligation but dependent upon whether the equipment could be made to perform according to specifications; and that the risk of doing this was assumed by plaintiffs. The court found in accordance with defendant's contention. While the evidence as to plaintiffs' assumption of this risk is conflicting, there is substantial evidence to support the trial court's determination.

Defendant testified that it was understood that the equipment might have to be worked on after delivery; that changes were contemplated by the partners after the first tests were made; that future tests were to be made; that tests were made and discussions had with Mission as to rectifying the work; and that Mission's attitude did not become threatening until April of 1949. He further testified that in August and September, 1948, he was unaware of any difficulties with the equipment, that plaintiff Stone had assured him it was operating satisfactorily, and that when he and plaintiffs were discussing the dissolution plaintiff Stone expressly stated that plaintiffs would be responsible for making it work and that defendant would not be held responsible for the Victor job. The attorney who represented plaintiffs in the dissolution testified that plaintiff Stone told defendant that the equipment was not then working properly, but that he could make it work properly, that then defendant stated he did not want to be responsible for any part of what it would cost to make it work, and was assured that he would not be. The attorney representing defendant in the dissolution testified in effect that it was definitely understood that plaintiffs would take over the welding, hoist and crane business, and defendant the electrical business, and that each party would assume all obligations of the jobs in process taken by him, and the other party would be released from any obligation therefor. While plaintiffs testified to the contrary, claiming that the assuming of obligations by them under the Victor

contract was limited to the cost of work thereafter to be done and did not include the guaranty, the testimony of both defendant and his attorney is positive to the effect that while the guaranty was not specifically mentioned, defendant was explicit in making it clear that the dissolution was final and that neither party would be subjected to any obligations arising from the jobs in process taken by the other party.

Both parties agree that it was understood that each party would bear the obligations of the jobs in progress assigned to him respectively. Plaintiffs testified that the Victor job was complete at the time of dissolution, that all that remained was to await the outcome of the tests, which outcome would determine whether the purchase price of the equipment would have to be returned. Defendant testified that the Victor job was not complete, that further work had to be done and hence it was still in progress. The court believed his testimony. Actually, the determination of this question depended mainly upon the court's determination of the credibility of the parties.

### FINDINGS

1. In finding III the court found that the assets transferred to plaintiffs on dissolution included all jobs in process connected with the welding, hoist and crane division "and all profits to be derived therefrom." Plaintiffs criticize the last phrase, stating that the dissolution agreement made no reference to profits. This is a captious criticism, inasmuch as both parties agree that the moneys to be received from jobs then in progress were to go to the party taking over such jobs. There is not the slightest intimation in this finding, as plaintiffs contend there is, that defendant did not receive his share of the profits from the Victor job, the full purchase price of which had long prior been paid to the partnership. Likewise the failure to find that defendant received the electrical business is immaterial. ■ That fact was conceded. There was no issue on it.

2. Finding V.

This found that notice of defects constituting failure to meet minimum specifications were not given to the partnership on occasions commencing about March 15, 1948. This is literally true according to defendant's testimony. While Victor and plaintiff Stone, during the period prior to dissolution, discussed the work necessary to be done, the situation did not justify a finding that notice of failure to meet the specifications was given. ■ The failure to find that ultimately

the equipment failed to meet the specifications is immaterial, as the court found that plaintiffs assumed the risk of making it so, and had released defendant from liability therefor.

3. Finding VI found that the parties treated the Victor contract as incomplete at dissolution and that plaintiffs solely assumed the work to be done on the equipment. While, as plaintiffs contend, this is directly contrary to plaintiff Stone's testimony, it is supported by the evidence of defendant and his attorney.

4. Finding VII refers to an agreement of rescission entered into in 1949 between Victor and plaintiffs. It states that defendant was not a party to it nor had knowledge of it, and that plaintiffs had no authority to enter into it on behalf of the dissolved partnership or defendant. The evidence fully supports this finding. The dissolution contract expressly provided that the partnership should continue only "for the limited purpose" of completing a contract known as the Mare Island contract (not involved here).

5. Finding X is to the effect that there had never been a full and complete accounting between the partners. Apparently the theory of this finding is that the parties had agreed on a distribution of the assets without actually having an accounting. It is difficult to determine what this finding means. However, whether the parties did have a full accounting, as plaintiffs contend, or did not, as defendant contends, is immaterial. It in nowise affected the understanding as to the Victor contract.

6. Finding XI is to the effect that on November 10, 1949, when Victor rescinded (more than a year after the dissolution), there was no fixed obligation on the part of the partnership to refund the purchase price to Victor. This is true as this was now the obligation of plaintiffs and not of the dissolved partnership. The finding further states that plaintiffs' acts in entering into the rescission contract and returning the purchase price were voluntary acts of plaintiffs. Whether Victor could have compelled plaintiffs under the partnership contract which they had assumed to refund the purchase price is immaterial as to defendant. Whether plaintiffs repaid the money under compulsion or voluntarily, defendant was under no obligation to plaintiffs to contribute. This finding appears to be inconsistent with finding V which referred to the guaranty originally given Victor by the partnership, taken over by the plaintiffs. However, such inconsistency is immaterial.

7. Finding XIII is based upon the statement in the dissolution agreement to the effect that the continuance of the partnership is limited to the Mare Island contract.

8. Finding XIV refers to the recovery made by plaintiffs in salvaging the equipment returned by Victor. Under the court's previous findings the recovery could not be for the partnership but for plaintiffs. If the amount is erroneous, that is immaterial as defendant has no interest in it.

While the dissolution agreement contained no provision with regard to liability under the Victor contract (this fact supports defendant's testimony and the court's finding that it was treated as work in progress) the court's findings, taken as a whole, are to the effect that plaintiffs solely assumed all the work yet to be done under the contract and all the obligations thereof.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.