[Civ. No. 6636. Fourth Dist. Mar. 20, 1962.]

DAVID N. M. BERK, Plaintiff and Respondent, v. TWENTY-NINE PALMS RANCHOS, INC., Defendant and Appellant.

Max Fink, Hyman O. Danoff and Howard L. Thaler for Defendant and Appellant.

Thompson & Colegate and Robert D. Allen for Plaintiff and Respondent.

GRIFFIN, P. J.—Plaintiff-respondent, David N. M. Berk, an attorney at law, recovered a judgment against defendant-appellant Twentynine Palms Ranchos, Inc., a corporation, for $6,000, upon an account stated for legal work and services performed by him for defendant corporation.

In its answer, defendant denied the existence of any such indebtedness and, by way of counterclaim, sought to recover from plaintiff the sum of $4,000 paid by defendant to plaintiff. In addition, it sought to recover from plaintiff compensatory and punitive damages allegedly suffered by defendant by reason of alleged malperformance by plaintiff. in the rendition of the legal services which he undertook to do and perform on behalf of defendant. The trial court rendered a judgment in favor of plaintiff for $6,000, and denied any relief to defendant upon its counterclaim and cross-complaint. In its brief, defendant confines itself to an attack upon the judgment in favor of plaintiff upon the complaint and does not question the propriety of that portion of the judgment denying defendant relief on its counterclaim and cross-complaint. The testimony adduced at the trial was highly conflicting upon several issues of fact.

## FACTS

Prior to 1955, plaintiff had known and had conducted business dealings with one Milton Appleby, who for some years prior thereto had been connected with the real estate business in various capacities. In 1949 or 1950, plaintiff represented one Lucille Steiner in an action for divorce in conjunction with which a property settlement agreement was negotiated. In the early part of 1955, Albert Foley, the father of Mrs. Steiner, died, leaving as a part of his estate 100 acres of land contiguous to the acreage owned by Mrs. Steiner. Mrs. Steiner and her brother were the sole distributees of this estate, the probate of which was handled by plaintiff. In the summer of

1955, plaintiff held discussions with Appleby and a Dr. Crystal, in which discussions plaintiff advised them of the existence of these properties and likewise informed them that the lands would be available for purchase when the estate of Mr. Foley was to be closed in October 1955. John Kantor and Albert Hoffman became interested with Appleby in the acquisition of these lands for subdivision development. Kantor had been engaged in the real estate business for over 20 years as a salesman of properties, including subdivision lands. Hoffman had been a licensed real estate broker for many years. In the early part of November 1955, Appleby, Hoffman and Kantor met with plaintiff in the latter's home in Banning for the purpose of discussing the possibility of acquiring the Twentynine Palms lands from Mrs. Steiner and her brother. Plaintiff had ascertained from Mrs. Steiner that the properties would be available for sale and that as far as she and her brother were concerned plaintiff was authorized to negotiate a sale for them. Appleby had visited and had seen the lands prior to the time of this meeting, at which time it was agreed among Appleby, Kantor and Hoffman that a corporation would be organized and formed for the purpose of acquiring the Steiner-Foley properties for the sum of $30,000 and for the further purpose of subdividing and selling said properties. For some undisclosed reason, Milton Appleby did not care to be designated as one of the officers of the corporation. His son, Jerome Appleby, was made an officer and director in his stead and Jerome gave Milton a power of attorney to act for him. Shares of stock were issued to the son, but he never attended any of the meetings. It further appears that Kantor's name was not satisfactory to the corporation commission and he did not continue as an officer. At this same meeting, it was further orally understood and agreed among the four parties that plaintiff would receive a 25 per cent stock interest in the corporation to be formed, for which stock interest he was to undertake and perform, on behalf of the three promoters and on behalf of the corporation, the following services: (1) all legal work required in connection with the acquisition of the Steiner-Foley properties and their transfer to the corporation to be formed, and (2) all legal work required in connection with the incorporation of the proposed corporation, including its formation and the qualification of its stock for issuance. No fee was to be charged to Steiner or Foley for arranging the sale of their property. At this same meeting, plaintiff informed Appleby, Hoffman

and Kantor that he was also representing Mrs. Steiner and Mr. Foley in a proposed transaction for the acquisition of their properties, and that he was necessarily required to concern himself with the protection of their interests.

Hoffman testified at the trial that plaintiff, at this meeting, agreed to perform other legal services for the three promoters and the proposed corporation, including services in connection with obtaining the approval of said lands for subdivision purposes by the County of San Bernardino. Hoffman's testimony in this respect was contradicted by plaintiff. As a result of a subsequent meeting between some or all of these same parties, plaintiff's terms of compensation were altered. It was plaintiff's testimony that this meeting took place around the first part of December 1955 and that, of the three promoters, only Appleby, and perhaps Kantor, were present. According to Hoffman, this meeting took place in late October or early November 1955 and all three of the promoters were present with plaintiff. In any event, at this meeting it was proposed by one or more of the three preincorporators that plaintiff receive, in lieu of the promised 25 per cent stock interest in the corporation to be formed, the sum of $10,000 as compensation for the legal services to be performed by him for the promoters and corporation to be. According to Hoffman, it was agreed by each of the three promoters that plaintiff would be paid this sum of $10,000 for his services to them and to the then nonexistent corporation after the corporation "had made money and we had recovered our money." After considering this proposed change in compensation for a few days, plaintiff said he agreed to accept as his fee for services the sum of $10,000 instead of stock in the corporation, and that his acceptance was communicated to the promoters. He stated, however, that the condition of payment was dependent on the time when Mrs. Steiner and Foley "were taken care of, and out of the picture."

Plaintiff then proceeded to perform the services and accomplished all legal work essential to the creation of the corporation, filing articles and performing legal work necessary for the securing of a permit for the issuance of stock. He performed all legal work required in the acquisition of the Steiner-Foley lands and the transfer of said properties from the sellers to the newly formed corporation. In addition, as secretary of the corporation, he prepared the first and subsequent minutes of that corporation. Plaintiff made no charge

to Mrs. Steiner or Mr. Foley for his services in handling the sale of their properties to defendant and he received no compensation from them.

At the outset, Hoffman, Kantor and Jerome Appleby (son of Milton Appleby) were the sole stockholders and directors of the corporation. Kantor served in the capacity of director until his resignation some time in January 1956. For some time after formation of the corporation, its officers were Hoffman as president, Jerome Appleby as vice president and plaintiff as secretary-treasurer. Prior to the time of trial, Hoffman purchased the stock interests of both Kantor and Jerome Appleby, and thereby became the sole owner and stockholder of defendant corporation. Before the time of the purchase of the Steiner-Foley properties by defendant corporation, Hoffman had visited the properties on several occasions. By the terms of the purchase and sale arrangement between defendant corporation, Mrs. Steiner and Boyd Foley, Mrs. Steiner was to receive $20,000 for her interest in the properties and Mr. Foley was to receive $10,000 for his interest. Neither received any down payment on the purchase price, and amounts owing them by the corporation were evidenced by unsecured noninterest-bearing promissory notes, one note in the sum of $20,000 made by the corporation in favor of Mrs. Steiner, payable at the rate of $200 per month, and the other note made by the corporation in favor of Mr. Foley in the sum of $10,000, payable at the rate of $100 per month.

In the latter part of December 1955, Milton Appleby informed plaintiff of an $11,000 trust deed available for purchase at a discount from Desert Palm Builders, a corporation in which Appleby was interested. He further informed plaintiff that if the latter were interested in purchasing this trust deed, an arrangement could be worked out whereby there would be applied, as a part payment toward the purchase price of this trust deed, $4,000 of the $10,000 fee payable to plaintiff. Plaintiff verbally agreed to this proposed arrangement and subsequently purchased this trust deed upon those terms. On December 31, 1955, at a meeting held in Desert Hot Springs between plaintiff, Milton Appleby, Hoffman and Kantor, Appleby announced to Hoffman and Kantor this proposed arrangement whereby $4,000 of the $10,000 fee owing plaintiff would be paid. It appears that neither Hoffman nor Kantor voiced any objection to this arrangement. Kantor testified at the trial that both he and Hoffman acquiesced in this method of partial payment of plaintiff's fee.

A written statement of Kantor, dated August 9, 1957, and received in evidence, reflects that the corporation may have approved this arrangement respecting the $4,000 credit toward the fee due plaintiff. At this same meeting, Hoffman and Kantor both agreed that there was a balance of $6,000 upon plaintiff's agreed fee payable to him by defendant corporation. Inquiry was made of plaintiff as to when he expected to receive this $6,000 balance, and plaintiff replied that he was willing to wait for the balance due him until such time as Mrs. Steiner and Mr. Foley "were taken care of, and out of the picture."

On March 1, 1956, plaintiff signed a receipt from the corporation, acknowledging the receipt of $4,000. It specified that the sum was "for services to be performed," although the services agreed to be performed had been performed. Plaintiff testified that Hoffman wanted the receipt in that form for bookkeeping purposes. Also received in evidence, from the books of account of defendant corporation's ledger sheets and from the journal and accounts payable ledger containing entries under the date of March 31, 1956, it is reflected that the corporation had an original indebtedness to plaintiff in the sum of $10,000, which indebtedness was reduced by a payment to plaintiff in the sum of $4,000, leaving an unpaid balance owing plaintiff in the sum of $6,000. There is also a written statement of Kantor of August 9, 1957, relating, in effect, that in the early part of December 1955, Hoffman, Appleby and Kantor agreed to pay to plaintiff the sum of $10,000 for his services; that in early January 1956 plaintiff purchased a trust deed from Desert Palm Builders, Inc., towards which purchase he was given a credit of $4,000 to apply on the amount due him on his fee from defendant corporation; and that a balance of $6,000 remained owing plaintiff, which the corporation then agreed to pay. In early 1956, Hoffman told plaintiff that defendant was encountering difficulty in making the monthly payments to Mrs. Steiner and Mr. Foley due under the outstanding promissory notes, and voiced the desire to "get them out of the picture" through some lump-sum settlement of the balance due them on the purchase price of the property. Subsequently, negotiations for this purpose were carried on for the corporation through Mr. Hoffman and by Mrs. Steiner and Mr. Foley, with the result that some time prior to May 1957 Mr. Foley accepted and received from defendant the sum of $3,500 cash in full

payment and satisfaction of the balance due on the note executed in his favor by defendant, and that Mrs. Steiner agreed to accept, in payment and satisfaction of the balance due on the unsecured promissory note executed in her favor by defendant corporation, trust deeds and contracts of sale (six in number) on subdivision lands lying within the former Steiner-Foley properties, which defendant had theretofore sold to third persons. These trust deeds and contracts of sale were assigned by defendant to Mrs. Steiner in satisfaction of the promissory note executed by the defendant in her favor and by a pledge agreement executed on May 9, 1957 whereby defendant assigned to Mrs. Steiner, as collateral security for the payment of these six trust deeds and sales agreements, another trust deed and another sales agreement owned by defendant. Thereafter, plaintiff made several demands upon defendant corporation, through Mr. Hoffman, for payment of the balance of his fee in the sum of $6,000. Defendant refused to pay this balance and plaintiff instituted the present action.

Defendant's evidence indicates that such a meeting was held in October or November 1955, at which time plaintiff, Milton Appleby, Kantor and Hoffman were present, and that they did agree to buy the land for $30,000 through a corporation to be formed; that at that meeting, a map of the property was shown to plaintiff and that plaintiff was informed that the only way the parties would be interested in the property would be that it be subdivided according to the map; that plaintiff was to organize the corporation and acquire the land for them as indicated and to assist the corporation in connection with obtaining a permit from the planning commission to subdivide the property; that plaintiff, after demand was made upon him, did nothing toward acquiring the approval of the planning commission to subdivide the land; that in December 1955 plaintiff met with Milton Appleby and Appleby suggested that plaintiff accept $10,000 for his services. Hoffman claimed that he was not present and the acceptance of the deed of trust and to give plaintiff a $4,000 credit was a private deal with Appleby; that the corporation never, by any corporate act, orally or in writing, agreed upon plaintiff's fee or acknowledged an indebtedness of $10,000 or $6,000 or any other sum and no corporation minutes so reflected such a transaction.

Defendant produced evidence that about June 5, 1957, plaintiff prepared a waiver of notice and minutes of the annual meeting of shareholders and a waiver of notice and

minutes of a meeting of the board of directors of Twentynine Palms Ranchos, Inc., purportedly referring to the annual meeting of the stockholders and meeting of the board of directors held on April 3, 1956. The minutes were prepared by plaintiff and included a resolution that the corporation was indebted to the plaintiff in the sum of $6,000. These minutes were mailed to Hoffman with a letter dated June 5, 1957. Hoffman refused to sign the minutes and rewrote the last page of them in reference to the $6,000 obligation. Plaintiff refused to sign the minutes of the meeting as corrected by Hoffman. Defendant contends that Milton Appleby never was an officer or director of the defendant corporation and had no authority whatsoever to act in behalf of or to obligate the defendant corporation. Kantor testified that plaintiff was to be paid $10,000 ''when and if we were in a position to pay him (plaintiff) that money''; that plaintiff agreed that the sum of $10,000 was to be paid to him out of the profits and earnings and that this ''could come to him after his clients were paid (the sellers) and after the complete investment had been recovered by those of us who were making the complete investment.'' He also testified that there was still money due to Mrs. Steiner on account of the deeds of trust and that the property here involved was not approved for subdivision purposes by the planning commission until July 5, 1956.

The trial court found generally in favor of plaintiff and against defendant, and specifically found an agreement by Milton Appleby, Hoffman and Kantor with plaintiff to form defendant corporation and that plaintiff agreed to do the legal work required in forming the corporation and in connection with acquiring the real property and that he was not required to perform any other legal work. It particularly found that there was no agreement by plaintiff to perform any service in connection with obtaining approval of said property for subdivision purposes; that on behalf of themselves and the corporation to be formed, the parties above named, in consideration of the services performed by plaintiff, both promised to pay plaintiff $10,000, to be paid to plaintiff at such time as defendant corporation either paid in full its indebtedness to Steiner on account of the purchase price of said property or at such time as said defendant corporation entered into arrangements with the said parties whereby any indebtedness owing from defendant corporation to them was secured in a manner satisfactory to said obligees; that it was not true that there was an understanding that plaintiff was to be paid

said sum out of the earnings or profits of defendant corporation; that in December 1955, defendant corporation ratified the oral agreement previously entered into in reference to the employment of plaintiff and the fee to be paid him; that on December 31, 1955, defendant paid plaintiff, on account, $4,000, and that an account was stated between plaintiff and defendant for the sum of $6,000 balance due, and that defendant agreed to pay it; that on May 9, 1957, defendant paid Foley all money due him and paid almost all of the indebtedness due Mrs. Steiner and entered into arrangements with her by giving additional security in a manner entirely satisfactory to her; and that defendant has not paid the $6,000 to plaintiff which the court found was due. Judgment was entered accordingly.

 The chief complaint on this appeal is about the findings, in that the court failed to find on certain facts, such as the fact that plaintiff was representing Steiner and Foley during the period in question. There is no dispute as to this question, either in the pleadings or the evidence. The finding thereon is immaterial to the issues. (*Stone* v. *Ryals,* 123 Cal. App.2d 523, 526 [266 P.2d 864]; 48 Cal.Jur.2d, sec. 283, p. 286.) A further examination of the record indicates that the court did find generally on material issues raised by the pleadings and presented by the evidence. It is the rule that if findings are made upon issues which determine the cause, other issues become immaterial and failure to find thereon does not constitute prejudicial error. (*Virtue* v. *Flynt,* 164 Cal.App.2d 480, 484 [330 P.2d 879].)

The remaining questions involve the sufficiency of the evidence to support the findings, particularly as to the agreements found to have been made and the authority of the makers thereof to bind the corporation, plus the claim of ratification of the oral agreement by the corporation and the application of the statute of frauds to such an agreement. Objection is also taken to the finding that $6,000 was due for services performed, arguing that to hold that such a fee was reasonable under the circumstances would be unconscionable.

 As to the findings that an oral agreement had been made to purchase the property and to form a corporation for the purpose of subdividing it, there appears to be little or no dispute. The corporation was formed and the property was purchased by it. Plaintiff was to receive 25 per cent of the shares of stock for his services. The court's finding that plaintiff's services had been performed and did not include services

in presenting the matters to the planning commission, had evidentiary support. Apparently it was the corporation's or Hoffman's idea that plaintiff should not have a 25 per cent stock interest in the corporation which prompted the settlement for $10,000. This item is reflected on the books of the corporation as an indebtedness of the corporation. Hoffman had attached a condition to the time of payment. That condition is not reflected in the books. The only question arising is with respect to the terms of that agreement. The evidence in this respect is in conflict. At any rate, the court was justified in finding from that evidence that it was intended that plaintiff would be paid the amount when the sellers had been paid, or were "taken care of." This last term has a broad meaning. Their acceptance of the payments made and securities given in payment of defendant's notes may well be understood to mean that they were "taken care of." The sellers so indicated. Under plaintiff's version of the agreement, the amount was due.

As to the payment of $4,000 on this account, the evidence does indicate that Milton Appleby was, in fact, dealing through Jerome Appleby as one of the incorporators, with a power of attorney, and this fact was well known to the officers of the corporation. Milton Appleby brought about the arrangements whereby plaintiff's account would be credited with the $4,000 realized out of the transaction. If Hoffman had no knowledge of this arrangement at its inception, there is no doubt that he subsequently learned of it and apparently acquiesced in and approved of this credit to plaintiff's account on behalf of the corporation. The books of the corporation reflected the credit and Hoffman testified that the entries were made under his direction.

There appears to be sufficient evidence to indicate adequate authority of the organizers of the corporation and its officers to bind the corporation, at least by ratification of the agreement. (*Hibernia Sav. & Loan Soc.* v. *Belcher,* 4 Cal.2d 268 [48 P.2d 681] ; *California Nat. Supply Co.* v. *Flack,* 183 Cal. 124 [190 P. 634].)

The question of the application of the statute of frauds (Civ. Code, § 1624) to this transaction, i.e., that a corporation's promise to answer for the debt of another must be in writing and the authority of its agent or employee to make a promise to answer for the debt of another must likewise be in writing, is raised for the first time on this appeal. This is not authorized. No claim of violation of the statute

of frauds is indicated in the pleadings or in the pretrial order and no objections to any testimony on the subject was indicated during the trial. No motion to strike such testimony was ever made. These facts alone would justify a refusal of this court to recognize it. (*Pao Ch'en Lee* v. *Gregoriou,* 50 Cal.2d 502 [326 P.2d 135].) In 37 Corpus Juris Secundum, at page 547, it is said: "Where a corporation, after its organization was completed, adopted a contract of its organizers under which services resulting to its benefit had been rendered, the contract becomes an original undertaking, not a promise to answer for the debt of another, and need not be in writing."

Cases supporting this rule are *Layton* v. *Central States Lead & Zinc Co.,* 147 Ark. 355 [227 S.W. 415, 417]; *Hart-Toole Furniture Co.* v. *Shahan,* (Tex.Civ.App.) 220 S.W. 181, 182. The California courts seemingly recognize this theory of promoters' contracts as evidenced by the decision in *Scadden Flat G. M. Co.* v. *Scadden,* 121 Cal. 33, 38 [53 P. 440], in which the Supreme Court approvingly quotes from the decision in *Battelle* v. *Northwestern etc. Co.,* 37 Minn. 89 [33 N.W. 327, 328] as follows: "The promoters are not the corporation, and their contracts cannot be its contracts. This is so, though the promoters become at the creation of the corporation its only stockholders, directors, and officers. After it comes into existence and operation it may, by adopting arrangements thus made for it in advance, make them its contract precisely as it might make similar contracts had no previous engagements been entered into. There can be no difference between its making a contract by adopting an agreement originally made for it in advance by its promoters and its making an entirely new contract."

 This is not an action for the value of reasonable services performed. It is an action based on an account stated and the court so found. No point was raised in the pleadings, in the pretrial order or during the trial concerning the claimed excessive compensation and no finding on the subject was made. We should not consider it on appeal. (*Johnson* v. *Hapke,* 183 Cal.App.2d 255 [6 Cal.Rptr. 603]; *Swanson* v. *Hempstead,* 64 Cal.App.2d 681, 683-686 [149 P.2d 404].) Had plaintiff based his cause of action on the basis of the value of reasonable services performed, there may well have been grounds for a review of the question. Here, all the parties were promoting a venture to purchase property and subdivide it. All were taking chances on the outcome of the venture for a

return on their money and for services performed. Plaintiff was willing to gamble the value of his services for 25 per cent of the stock in the corporation, and apparently all of them so agreed. The corporation believed it would be of benefit to the corporation to cancel this agreement and substitute a fixed fee for this estimated service. This was knowingly done and the corporation books reflected such an agreed indebtedness. ██ Usually the mode and measure of an attorney's compensation for services rendered to a client is a matter for contractual agreement between them. (*Tracy* v. *Ringole*, 87 Cal.App. 549, 551 [262 P. 73]; Code Civ. Proc., § 1021.) ██ Where the attorney and the client each have the capacity to contract, and the fee is fixed or determined by their contract, such determination is generally binding on both parties. (*Cole* v. *Superior Court*, 63 Cal. 86 [49 Am.Rep. 78].) ██ The client cannot escape full payment merely because the attorney's services proved to be less valuable than the parties had in mind when they entered into the contract. (*Reynolds* v. *Sorosis Fruit Co.*, 133 Cal. 625, 630 [66 P. 21]; 6 Cal.Jur.2d § 180, p. 374.) ██ An attorney suing upon a contract for an agreed fee is not required to prove the reasonable value of his services. *MacInnis* v. *Pope*, 134 Cal. App.2d 528, 530 [285 P.2d 688], held: "This is not a case of 'reasonable value.' Plaintiff sued on a written contract fully performed. It would seem unnecessary to cite authority for the point that when an attorney fully performs the services required by the contract he is entitled to the fee stipulated in the contract."

██ True, as is cited by defendant, there are cases to the effect that where the contract for compensation is entered into after the relationship of attorney and client has been established, the burden is upon the attorney to show that the agreement for compensation was fair and openly made with full knowledge upon the part of the client of the facts and of his legal rights with relation thereto, such as *Lady* v. *Worthingham*, 57 Cal.App.2d 557 [135 P.2d 205], and *Cline* v. *Zappettini*, 131 Cal.App.2d 723 [281 P.2d 35]. The cases are quite clear that this principle of law does not attach to a contract by which the relation of attorney-client is created and the compensation of the attorney therein fixed. In agreeing upon the terms of such a contract, the parties deal at arm's length. (*Bonelli* v. *Conrad*, 1 Cal.App.2d 660, 667 [37 P.2d 137]; *Cooley* v. *Miller & Lux*, 156 Cal. 510, 523 [105 P. 981].) The facts in the instant case would seem to fall within the

rule announced in the last cited cases, since plaintiff's fee was fixed and determined not by him but by the three promoters, and at a time during the creation of the relationship prior to plaintiff's taking any action by way of rendering work or services to the promoters or to defendant. It does not appear that plaintiff's dealings between himself and his client were unfair and inequitable under the circumstances related.

Judgment affirmed.

Shepard, J., and Coughlin, J., concurred.