[In Bank. — January 26, 1883.]

EDWARD P. COLE, PETITIONER, v. THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, AND JOHN HUNT, JR., ONE OF THE JUDGES THEREOF, RESPONDENTS.

GUARDIAN AD LITEM — POWER TO CONTRACT — COMPENSATION OF ATTORNEY — JURISDICTION OF THE COURT. — A guardian *ad litem* was appointed to bring an action on behalf of certain infants and an insane person. The guardian employed an attorney to prosecute the action, and made a contract with him as to the compensation he should receive. The action was successful, and resulted in a judgment for several thousand dollars. The judgment was afterwards paid, and the money went into the hands of the attorney. The court thereupon made an order fixing the compensation of the attorney without regard to the contract, and requiring him to pay into court the residue of the money. *Held,* that the guardian *ad litem* had no power to make the contract, and that the order was not in excess of the jurisdiction of the court.

CERTIORARI to review an order of the Superior Court of the city and county of San Francisco.

The facts are stated in the opinion of the court.

*E. D. Wheeler,* for Petitioner.

*M. C. Hassett,* for Respondents.

MYRICK, J. — A writ of review was granted on the application of petitioner to review the action of the Superior Court had upon the following state of facts: —

Catharine McKeever, an insane woman, and John McKeever, Jane McKeever, and Mary McKeever, minors, by their guardian *ad litem,* Margaret Hayes, commenced an action against the

Market Street Railway Company, to recover damages for the
death of Daniel McKeever, the husband of said Catharine, and
the father of said minors. The said guardian *ad litem* employed
the petitioner, E. P. Cole, Esq., an attorney at law, to com-
mence and prosecute said action as attorney for the plaintiffs.
The guardian *ad litem* had no means with which to pay the
necessary expenses of the action, including costs and the attorney's
fees, and Mr. Cole undertook to, and did pay the costs. Such
proceedings were had in the action that on the 9th day of
December, 1880, judgment was recovered by the plaintiffs
against the railway company for $6,501.25 damages, with inter-
est, and $108.50 costs; which judgment, on appeal, was affirmed
by this court. Upon the going down of the remittitur an exe-
cution was issued February 3, 1882, and on the following day,
February 4, the railway company paid to Mr. Cole the sum of
$7,144.26, being the full amount then due for damages, interest,
and costs; and Mr. Cole caused satisfaction to be entered. Dur-
ing the pendency of said appeal in this court, to wit, on the 28th
day of October, 1881, letters of guardianship of the persons and
estates of the said minors were duly issued by the proper court,
to wit, the Superior Court of the city and county of San Fran-
cisco, to Daniel Sheerin. On the 4th day of February, 1882,
the day on which the attorney received the amount of the judg-
ment, the said Daniel Sheerin, as guardian, petitioned the
Superior Court in which said judgment had been rendered for
an order that Mr. Cole pay the money into court, and that the
court fix his proper compensation. An order to show cause was
made and served. On the hearing the attorney admitted the
receipt of the money, and that he was ready and willing to
pay to any person authorized to receive the same, the amount
which justly and fairly belonged to the plaintiffs, but objected
that the court had no authority to fix the compensation, or to
compel him to pay the money into court. The court overruled
the objection, and after hearing testimony fixed the full compen-
sation of counsel for the plaintiffs for services and expenses at
$2,500, and ordered that the balance of the amount received be
paid into court by two o'clock of February 8, 1882. On the
9th day of February, 1882, Mr. Cole paid into court $4,644.26,
leaving in his hands $2,500, the amount fixed by the court, and

on the same day the court ordered that $3,000 of the amount so paid be paid to Sheerin, the guardian of the minors, on his giving a proper bond.

The question for consideration before us is, as to the power of the Superior Court in which the action was pending, and the judgment was obtained, to fix the compensation of the attorney employed by the guardian *ad litem*, and order the balance paid into court. It is proper to remark that the only objection appearing on the part of the attorney is as to the power of the court to make the order. It is urged on his behalf that the court had no power "to take from Mr. Cole's pocket money lawfully in his possession, and that he claimed in good faith to be his own, and transfer it to the custody of the clerk of the court" [we quote from the argument]; that the Constitution of this State guarantees to all the right of trial by jury, and that "no person shall be deprived of life, liberty, or property, without due process of law"; that he had the right to submit to a jury, in a regular action instituted to that end, evidence as to what would be a proper compensation, and to have the determination of the jury thereupon.

By the law of this State, § 1021, Code of Civil Procedure, "the measure and mode of compensation of attorneys and counsellors at law is left to the agreement express or implied of the parties"; and in cases where an attorney is employed by a person capable of making a contract, which shall bind him or those whom he may represent, the attorney may have his action to recover the amount agreed upon in the one case, or the value of the services in the other; and in such cases, the fact of the existence of the contract and the amount agreed upon, or the value may be submitted to a jury. But, in cases where there is no one authorized to make a binding contract, the section of the Code above referred to would not apply. There must be some one on either side authorized to contract, or there is, of course, no valid contract. In *Gurnee* v. *Maloney*, 38 Cal. 85, this court held that the administrator of the estate of a deceased person could not make a contract for the payment of fees for services to be rendered by an attorney which would bind the estate. It seems to have been conceded in that case that the administrator had power to select an attorney, but such selection would

be made, and the services would be rendered in view of the rule that the proper court [in that case the Probate Court] would have the right to pass upon and determine the proper compensation. In the matter before us neither of the plaintiffs in the action under consideration could have employed an attorney to commence or prosecute the action—neither could have brought the action in his or her own name—each of them was under disability; it was therefore necessary that the action should be brought by a general guardian, or by a guardian *ad litem.* In the case of a general guardian the appointment would have been made after due proceedings under article 2, chapter 14, Code Civ. Proc.; in the case of a guardian *ad litem* the appointment would be made by the court in which the action was pending, or was about to be commenced. It is not necessary to consider, in this case, the powers of a general guardian regarding the employment of an attorney; we are now considering only the powers of a guardian *ad litem.* The guardian *ad litem* is an officer of the court appointing him; his duties are "to represent the infant, insane or incompetent person in the action or proceeding." (Code Civ. Proc. § 372.) He may, doubtless, employ an attorney to assist him in the prosecution or defense of the action, but he may not make a contract for the payment of compensation which shall absolutely bind the ward or his estate. He is like an agent with limited powers. If he collect the amount of a money judgment recovered by the plaintiff in the action, it should seem that, from the nature of his office, he may be compelled to an accounting by the court from which he received his authority. The court is, in effect, the guardian — the person named as guardian *ad litem* being but the agent to whom the court, in appointing him (thus exercising the power of the sovereign State as *parens patriæ*) has delegated the execution of the trust; and through such agent the court performs its duty of protecting the rights of the infant or incompetent person. His powers are certainly no greater than those of a general guardian. Like the latter he may be allowed a credit for moneys advanced or paid out of the fund collected, as reasonable compensation for the expenses, and for the services of an attorney. But he has no power by specific agreement with the attorney to fix such compensation absolutely. An attorney

accepting employment, and rendering services under such circumstances, must rely upon the subsequent action of the court in ascertaining and adjudging proper compensation. He cannot determine the amount, nor can he retain what he or the guardian *ad litem* may deem a proper sum, leaving it to the general guardian to sue for the excess. There is no place here for the doctrine of an implied promise upon a *quantum meruit.* The presumption of a promise is rebutted by the fact that the guardian had no power to contract in such manner as to bind the assets of the ward except conditionally. The attorney performing legal services for the infant aids the court in carrying out its duty of protection; he is not only an officer of the court in the general sense, but is the special agent through which the court acts; in this respect his position being analogous to that of an attorney employed by a general guardian, or by an executor or administrator. In the cases last referred to the compensation is, under our system of laws, fixed by the Probate Court. The statute being silent as to the tribunal which is to fix the compensation in case of a guardian *ad litem,* it seems to reasonably follow that the court placing him in position and making use of his service would have the fixing of his disbursements and the compensation of the attorney employed.

The cases cited by the petitioner do not apply to this case. *In re Paschal,* 10 Wall. 483, was a case of employment *with power to contract.* In that case, the party applying for the order that his attorney pay to him the amount collected, was capable of contracting, and had contracted, for the employment and for the compensation; and the attorney claimed the right to have his accounts with the client fully adjusted. The court held that it would not, in such a proceeding, adjust the accounts, but would leave the party to his action. The court did not stand in any such relation with the party and the attorney, as courts stand with regard to infants and attorneys acting in their behalf.

It is urged, that by not permitting the attorney for the infant to retain such portion of the money collected as he may deem just, he is deprived of his property without due process of law, and is also deprived of his constitutional right of trial by jury. The error of the petitioner is in supposing that any specific portion of the money is his property. Such portion, only, of the

money collected will be his property as the court may fix; and until so fixed, he has no such right of property, as is contemplated by the Constitution. In accepting the employment he consented to perform his duty without other compensation than such as might be allowed by the court. The guarantee of the right of trial by jury does not apply to such a case as this. There is no question of fact for a jury to try. The court fixes the amount, and when so fixed it is settled.

It is also urged that there was no power to direct the money to be paid on the application of the general guardian; that so long as the appointment of the guardian *ad litem* remained unrevoked, the general guardian had no standing in regard to the suit. It is sufficient to say that the appointment of the guardian *ad litem* is made, as the name of the office indicates, for the purpose of the suit — to represent the ward *in the action*. When the action is terminated, the amount recovered becomes assets of the ward, to be managed and controlled for his benefit. The guardian *ad litem* does not manage the ward's general estate, investing and reinvesting, but such duties are performed by the general guardian; and in order to perform those duties he should have the control of the property.

The amount allowed to Mr. Cole for his services and disbursements was twenty-five hundred dollars. The costs recovered amounted to one hundred and eight dollars and fifty cents. It would thus appear that the court allowed as compensation for services nearly twenty-four hundred dollars; and these amounts he was permitted to retain. The court certainly had power to direct him to pay over the remainder. Possibly the court might have had power, before fixing this amount for his services, to require him to pay over the whole sum collected, and afterwards make such allowances as should be just, but the court saw fit to make the allowance first, and order the balance . to be paid over. We see no error.

Writ dismissed.

Morrison, C. J., Thornton, J., and Ross, J., concurred.

Sharpstein, J., dissenting.—It is conceded that the guardian *ad litem* was authorized to employ an attorney to prosecute

the action for the infant plaintiffs, and that the plaintiff here was duly employed by said guardian *ad litem* to prosecute said action, and that he did prosecute it to final judgment; and that he received the sum recovered and discharged said judgment as he was authorized to do. (Code Civ. Proc. § 283.)

And it will probably be conceded that if the parties, for whom he appeared in the action in which he recovered such judgment, had been adults, the court in which said action was tried could not in a summary manner have determined the "measure and mode of his compensation, because that "is left to the agreement, express or implied, of the parties." (Code Civ. Proc. § 1021.) There are cases in which a court will summarily compel an attorney to pay over money which he has received in satisfaction of·a judgment recovered by his client. But those are cases in which it is charged and made to appear that the attorney by not paying the money over is acting in bad faith. "It is this misconduct on which the court seizes as a ground of jurisdiction to compel him to pay the money in conformity with his professional duty. The application against him in such cases is not equivalent to an action of debt or assumpsit, but is a quasi-criminal proceeding in which the question is not merely whether the attorney has received the money, but whether he has acted improperly in not paying it over. If no dishonesty appears, the party will be left to his action." (*In re Paschal,* 10 Wall. 483.) .

The only question which we have to determine in this proceeding is, whether the Superior Court acted without or in excess of its jurisdiction? And unless this case is distinguishable from *Paschal's,* this question is not altogether new. For as we interpret the opinion in that case, the court distinctly held that, in the absence of an allegation or proof of bad faith on the part of an attorney retaining money collected by him for a client, the court would not have jurisdiction to proceed in a summary manner against the attorney to compel him to pay it over to the client. That it was *prima facie* the duty of the attorney, "after deducting his own costs and disbursements," to pay over the residue to his client. But that for his fees and disbursements he had a lien upon the fund in his hands, and was under no obligation to pay over anything beyond the amount

remaining in his hands after deducting the amount of his fees and disbursements. And that where it appeared the attorney and client *honestly* differed as to the amount of such fees and disbursements, they would be left to the usual remedy at law. A motion for an order to have an attorney pay over money which he has collected for a client cannot be properly granted unless the neglect or refusal to pay it over be imputable to a dishonest motive. The motion must be based upon the misconduct of the attorney. That is necessary in order to give the court jurisdiction to proceed in a summary manner. Such we understand to be the doctrine of the court *In re Paschal,* and it commends itself to our judgment.

But it is contended that that case differs materially from this. In that case the parties for whom the attorney had collected the money which it was sought to have him compelled to pay over were adults. In this case they are infants. But it is not contended that the attorney in this case was not authorized to receive the money recovered and to acknowledge satisfaction of the judgment. Nor is it contended that he did not have a lien upon the fund in his hands for the amount of his fees and disbursements, or that he had no right to retain in his hands the amount of said fees and disbursements. But it is claimed that because the residue after deducting the amount of said fees and disbursements would belong to infants, the court had jurisdiction to proceed and determine in a summary manner the measure of compensation of their attorney. But the legislature when enacting that the manner and mode of compensation of attorneys should be left to the agreement of the parties, express or implied, did not provide that in cases where infants were parties the measure and mode of compensation of their attorneys should be left to the court in which the action was tried.

And there does not appear to be any very good reason for making any such distinction. It cannot be assumed that a judge, by proceeding to determine in a summary manner the amount of compensation to which an attorney is entitled for services rendered in behalf of infant parties, would be more favorable to the infants than a jury, or that there would be less likelihood of justice being done between the parties after both had had an opportunity of a fair trial before a court and jury

than there would be if the matter was summarily heard and determined by a judge upon motion.

And the general guardian who appears on behalf of the infants in this proceeding could as well have commenced an action as to have made a motion for the adjustment of the matter in controversy between his wards and the plaintiff herein.

The analogy between this case and one in which a general guardian of an infant sues or defends for his ward, is too slight to warrant a court in holding that the rules which prevail in regard to the employment and compensation of counsel by a general guardian can be applied to a case in which counsel appears on behalf of infants in an action in which they sue or defend by a guardian *ad litem.* Speaking of the appointment of a guardian *ad litem,* Abbott says : " Such an appointment does not seem to involve any relation of guardianship in any full or significant sense of the term, so little is any custody of person or estate involved." (Abbott's Law Dict.)

There is no law which authorizes such a guardian to allow or present to a court for allowance any claim for compensation of counsel for services rendered for the ward of such guardian.

And in *Smith* v. *Smith,* 69 Ill. 308, it was distinctly held, that where an infant is a party to an action, and appears by a guardian *ad litem* and an attorney, the fees of such attorney could not, in the absence of a statute authorizing it, be taxed by the court, in which the action was tried, upon the petition of the guardian *ad litem,* but that such fees could only be recovered in the usual mode against the general guardian, and collected out of the infant's estate. In that case the action in which the attorney had appeared for the infant involved the title to real estate, and the attorney did not, as in this case, have the fruits of the litigation in his own hands. So that the question of the right of the attorney to hold on to money recovered in an action for an infant client until his, the attorney's, fees were paid, was not involved in that case. But by parity of reasoning it would seem that if in the one case the attorney must sue the general guardian for his fee, in the other the general guardian must sue the attorney for such amount as the attorney retained over and above his fair compensation; that is, in a case like this, in which it is not claimed that the attorney withholds any-

thing beyond the sum to which he *honestly* believes himself entitled.

If the summary jurisdiction of the court depends, as was held *In re Paschal* (*supra*) upon the question of the attorney's good faith in withholding what he claims to be due him, it is quite clear that the court below exceeded its jurisdiction in making the order now before us, and therefore it should be annulled.

McKEE, J., dissenting.—I dissent. The moneys collected by the petitioner in this proceeding, as attorney at law for his infant clients, constituted the estate of the infants. To the possession of the estate and of the persons of the infants the general guardian was entitled. The guardian was subject to the supervision, and amenable to the orders of the Superior Court, sitting as a Probate Court; and the estate was a probate matter, over which the court had, as a Probate Court, under § 5, article vi., of the Constitution of 1879, the exclusive jurisdiction. As such it alone had authority to ascertain and determine the proper amount of compensation to which the attorney for the infants was entitled for the services which he had rendered in securing the estate of the infants; and upon presentation of a petition or claim against the estate for such services, it could, in the exercise of its jurisdiction, allow and order paid out of the estate what was just and reasonable.

But the Superior Court, sitting as a court of law, exercising its jurisdiction over parties to an action at law, in which a money judgment had been rendered and satisfied, had no jurisdiction of the money collected in satisfaction of the judgment, as part of the estate of the infants. Nor had it jurisdiction to ascertain and determine in the action the amount of compensation to which the attorney for the infants, who collected the judgment, was entitled for his services. The guardian could not make any contract with the attorney which would be binding on the estate of his wards. Such a contract, if made, would be, so far as the estate is concerned, null. (*Paige's Estate*, 57 Cal. 238; *Danielwitz* v. *Sheppard*, 62 Cal. 339.)