It is contended that the Superior Court acquired no jurisdiction to make such order in the original case of In re Stone because the proceeding was erroneously commenced before the clerk, who had no jurisdiction. When the matter reached the Superior Court by appeal the judge had the right under the statute to assume jurisdiction and dispose of the case as if originally begun there. Clark's Code, sec. 255 (3d Ed.); Roseman v. Roseman,127 N.C. 497, and cases cited.
The case of In re Stone was still pending in the Superior Court by virtue of the decree of Bond, J., who tried it at October Term, 1916, as follows:
"It is further ordered, adjudged and decreed that the said Carey W. Stone, as administratrix and guardian, render an account to the Clerk of the Superior Court of Wake County on the sum of $6,500 received by her for the use of the said infant, Thomas S. Stone; that she give the bond in double the said amount as guardian of the said infant, as required by law, and that she be allowed until the first day of December to give said bond in the penal sum of $13,000. *Page 338 
"It is further ordered and adjudged that the said Carey W. Stone, guardian, pay the costs of this action out of the entire fund; and it appearing that notice of appeal to the Supreme Court has been given herein, the amount of attorneys' fees to be paid to the attorneys representing the next friend in the protection of the estate of said infant is reserved for the future determination of this court, to be taxed against the fund belonging to said infant."
By reason of that decree the Superior Court retained its control over the case, and when the appeal from the clerk came before Judge Stacy he had jurisdiction to hear the matter de novo and to treat it as a motion in the original cause.
The facts are that Mrs. Stone, as administratrix, recovered $10,000 for the negligent killing of her husband. A controversy arose between her and her only child as to the division of this fund. In that action E. P. Stone, uncle of Thomas S. Stone, the infant, was appointed next friend by the court to protect the interests of the infant. In order to do so, he employed counsel to appear in the cause, which they successfully prosecuted to this Court, and thence followed it to the Supreme Court of the United States. Under the final judgment, they recovered for the infant $6,500.
We are of opinion that the Superior Court retained jurisdiction of the cause and control of the fund, and that the judge had authority to make the order. It was peculiarly his duty to make the allowance under the circumstances of this case, as the next friend had been directed to employ counsel and the infant's mother and guardian were hostile to them.
The prochein ami, or next friend, is appointed by the court to protect the infant's rights. It is essential that he have the assistance of counsel learned in the law. The infant has no power to contract as to fees, and in most cases is too young to understand such matters. Referring to the duty of the court in respect to infants, in Tate v. Mott, 96 N.C. 23, JudgeMerrimon says: "The infant is in an important sense under the protection of the court; it is careful of his rights, and will in a proper case interfere in his behalf and take, and direct to be taken, all proper steps in the course of the action for the protection of his rights and interests."
It would be very singular that the Courts should assume the duty of seeing that all steps are taken to protect the infant's rights and yet deny to themselves the power to compel the payment of the necessary expenses out of the infant's estate recovered in the cause.
While the next friend has power to employ counsel to prosecute the action, and it is his duty to do so, he cannot make a binding contract for compensation. Honck v. Bridwell, 28 Mo. App. 644. The court *Page 339 
may fix the attorneys' compensation without regard to any contract. 14 Ency. P. P., 1037, and cases cited; Cole v. Superior Court, 63 Cal. 87.
In this case the Supreme Court of California says: "An attorney accepting employment and rendering services under such circumstances must rely upon the subsequent action of the court in ascertaining and adjudging proper compensation. . . . There is no place here for the doctrine of an implied promise upon a quantum meruit. . . The attorney performing legal services for the infant aids the court in carrying out its duty of protection. He is not only an officer of the court in a general sense, but is the special agent through which the court acts."
The Court further says: "The statute being silent as to the tribunal which is to fix the compensation, it seems to reasonably follow that the court placing him in position and making use of his services would have the fixing of the compensation of the attorney employed."
The case of Outland v. Outland, 118 N.C. 141, is direct authority. In that case Thomas Outlaw, non compos mentis, brought action by his next friend to subject land to a lien for a legacy devised by his father. The next friend employed counsel. The plaintiff was successful in charging the land with the legacy. Counsel was allowed $200 by the Superior Court. In reviewing the matter, the Supreme Court said: "We think the allowance of $200 as an attorney's fee in this case is too much and it is reduced to $100." The Court passed on the allowance and reduced it and allowed the amount that seemed just. See, also, Graham v. Carr, 133 N.C. 458. We think our position is sustained also by the following additional cases:Colgate v. Colgate, 23 N.J. Eq., 373; Richardson v. Tyson, 110 Wis. 572;Smith v. Smith, 69 Ill. 313. We do not question the authority of such cases as Mordecai v. Devereux and Patterson v. Miller.
The question involved in this case was not presented in those cases. There was no next friend in either of those cases and no attorneys representing infants by direction of the court. In this case the Superior Court did not interfere between attorney and client. The attorney was not employed by the infant, but by direction of the court, and acted under its control. To our minds, it would be extremely unfortunate to the cause of infants generally to hold that the court has no power to reward the attorney out of the estate recovered.
Coming now to the matter of compensation, we concur with the Illinois Court in Smith v. Smith, supra, that "Courts have no right to be prodigal with the means of their wards; and whilst they should make just allowances, they are bound to see that their funds are protected."
Attorneys, being officers of the court, are sometimes compelled to *Page 340 
render laborious service for no fee, and to the credit of the legal profession be it said such service is rendered most willingly. When serving under the direction of the court to protect the rights of an infant, their compensation is to be measured by the standard of official emoluments rather than by that of the prices demanded and paid between individuals free to contract at will.
In this case, the services rendered by the able counsel who represented the infant were undoubtedly valuable and attended with expense, and have so far been unrewarded. The case was argued before this Court and the Supreme Court of the United States; but it is not altogether a question as to what their services are worth; so much as it is, what is the infant's estate able to pay? Measured by that standard, we feel it our duty to reduce the sum allowed to $500.
With that modification, the order of Stacy, J., is affirmed.
The costs of this Court will be taxed against Mrs. Carey W. Stone individually, one-half and the other half against Winston, Biggs, and Amis.
Affirmed.
ADDENDA (by request).
 FINDINGS OF FACT AND ORDER OF CLERK OF SUPERIOR COURT OF WAKE COUNTY.
This motion to allow attorneys' fees in this proceeding coming on to be heard on 29 June, 1918, and being heard, the court overrules the motion to dismiss for want of jurisdiction, and the said guardian excepting to the same, R. W. Winston, Col. John W. Hinsdale, and John W. Hinsdale, Jr., testify in the case. It is agreed that all orders, records and evidence, including orders, pleadings, judgments and decrees in this litigation in all the courts, constitute a part of the evidence now taken.
The following facts from the evidence are found in addition to what appears in the record:
Emmet P. Stone was appointed next friend of the infant, Thomas S. Stone, in September, 1916; previous to said date he had employed M. N. Amis in this matter. Subsequent to said time he employed Winston Biggs as attorneys to represent him as next friend of said infant, and he likewise continued the employment of Mr. Amis after he was appointed next friend. The amount of the fee to be paid said attorneys was not agreed upon or mentioned, but the next friend instructed them to recover the said infant's part of the $10,500 in litigation.
The administratrix, Mrs. Stone, filed her final report 22 June, 1916, in which she stated that $10,500 was paid her not as administratrix but in her individual capacity, and that it was not included in her report as administratrix. The clerk heard protracted argument and adjudged that when she received said sum as administratrix, by operation of law, it passed to her as guardian, and she was responsible as guardian for two-thirds of same which belonged to her ward. She appealed to the Superior Court and lost, and then to the Supreme Court of North Carolina and lost, and then to the Supreme Court of the United States and her appeal was dismissed because her attorneys committed the error of applying for a writ of error instead of acertiorari.
Winston Biggs and M. N. Amis rendered necessary services for the next friend in the Superior Court before the clerk and before Bond, J., in the Supreme Court of North Carolina, in the Supreme Court of the United States, and then again before the clerk, and again before Judge Ferguson in the Superior Court, and again in the clerk's court to require her to file a final account and to include the sum of $6,500, and upon a motion to attach her for contempt.
In each matter she filed an answer, attempting to raise a Federal question and claiming that she was not estopped by any proceedings because the United States Court had not passed on her appeal. Said attorneys instituted suit in the Superior Court, filed a complaint and notice of lispendens to bind the house and lot which she purchased with the money paid her by the railroad for the death of her husband; that she did not recognize the interest of said infant in said fund until this proceeding was begun; that she converted the said sum to her own use in purchasing a house and lot and taking a deed in her own name and in lending out the same in her own name, and that that condition exists now. That the services of said attorneys were necessary to protect said infant's estate and were valuable, and that the result of said services was the addition of $6,500 to said estate. That Col. John W. Hinsdale and John W. Hinsdale, Jr., are attorneys of this bar in good standing and large experience, and that after hearing the testimony of R. W. Winston as a witness, and from their knowledge and experience as lawyers, testified that $1,000 was a reasonable fee for services rendered. That a printed brief was filed in the Supreme Court of North Carolina and of the United States, and an oral argument in both courts; that R. W. Winston went to Washington and was out of his office four days in the necessary representation of said case to the United States Supreme Court; that the necessary expenses of said trip which he paid was about $50, and that he has paid the necessary costs of the case as it proceeded; that the next friend is the uncle of the infant on his father's side; that he has never had any funds or property of the infant in hand; that said next friend acted throughout the said litigation in good faith; that each step taken was necessary to protect the infant's estate, and but for the same the infant might have lost the entire $6,500; that the matters involve delicate and difficult law questions which have been hotly contested by Mrs. Stone and her attorneys; that the attorneys of the next friend have had numerous conferences and have given a great deal of time and attention to the preparation of the case; that the Supreme Court of the State was divided on the case by a 3 to 2 vote.
Upon the foregoing facts and from the entire record it is adjudged that the fund of $6,500 recovered in this litigation, and a large portion of which is now in the guardian's hands and under the supervision of this court so recovered for said infant by the efforts and labors of said next friend and his attorneys, should not escape the necessary costs and expenses incurred in its recovery, and that in addition to the other costs to be taxed by this court that $650 be by said guardian paid into this court as necessary and proper costs of the attorneys of record in making and saving said recovery to said infant's estate. It is ordered that the said guardian pay said sum of $650 into this court for said purposes.
From this order the guardian appeals, and so do the attorneys for the next friend. The bill of the attorneys will constitute a part of the record. (Signed) MILLARD MIAL, C. S.C.
JUDGMENT OF STACY, JUDGE.
This cause coming on to be heard at the June Term, 1918, of Wake Superior Court, before Hon. W. P. Stacy, judge presiding, upon the appeals by both sides from the order of Millard Mial, Clerk of the Superior Court of Wake County, entered in this cause on 29 June, 1918, and being duly heard, after due consideration and after argument by counsel for each side, the findings of fact of said clerk are in all respects approved and confirmed by the court, except the allowance of $650 to the attorneys for the next friend; and as to that the court is of the opinion, and so finds, that said sum is not a reasonable fee, but that $1,000 is a reasonable and proper fee for said attorneys, and the findings of fact and order of said clerk is modified in this respect.
W. P. STACY, Judge Presiding.