Filed 1/22/14  Pierson v. Burlison CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CHARLES PIERSON et al., | B244908 |
| Plaintiffs, Cross-defendants and Respondents, | (Los Angeles County Super. Ct. No. BC428459) |
| v. | |
| ROBERT C. BURLISON, JR., et al., | |
| Defendants, Cross-complainants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles, Ernest M. Hiroshige, Judge.  Affirmed in part, reversed in part and remanded.

Burlison Law Group and Robert C. Burlison, Jr. for Defendants, Cross-complainants and Appellants.

Leist Law Group and Jeffrey J. Leist for Plaintiffs, Cross-defendants and Respondents.

Appellants Robert C. Burlison, Jr. and his firm, Burlison & Luostari (B&L), appeal a judgment rendered in favor of former clients respondents Charles Pierson and Donald and Ani Hovanesian. The trial court found that appellants committed legal malpractice resulting in damage to Pierson in the amount of $168,000, representing a judgment for attorney fees awarded to the defendants in a prior breach of contract lawsuit to which Pierson had been improperly added as a plaintiff. The court further found that the Hovanesians were owed $40,000 in settlement funds recovered in the prior litigation. Although appellants presented evidence that the Hovanesians had not fully paid for all legal services rendered during the prior litigation under a retainer agreement with B&L, the court concluded that appellants were entitled to no offset because the retainer agreement included a provision permitting B&L to assert an improper lien over funds recovered in the prior litigation. We conclude that despite the invalidity of the lien provision, B&L was not barred from recovering for breach of contract for services rendered under the retainer agreement. We therefore remand for determination of the amount owed B&L, if any, under the evidence presented at trial. We otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Prior Litigation*

In 2006, respondent Pierson entered into an agreement to purchase a home in Sun Valley from Christopher and Lynn Couveau for $750,000. While escrow was pending, Pierson's agent (his brother, Gary Nicholson) wrote to the Couveaus' broker indicating that the sale price should be reduced because the property had been appraised for $720,000. The Couveaus treated Pierson's letter as a

2

repudiation, and thereafter sold the house to another party for substantially more than $750,000.[1]

Pierson assigned all of his rights in the purchase contract to respondents Ani and Donald Hovanesian. In July 2006, the Hovanesians, represented by attorney Thomas Kostos, initiated legal action against the Couveaus.

On October 12, 2006, the Hovanesians replaced attorney Kostos with appellants, and entered into a written retainer agreement with B&L. The agreement provided that attorney fees for legal services rendered by appellants would be billed at an hourly rate. The agreement stated that the Hovanesians granted to B&L "a lien against any recovery on this claim to satisfy or discharge any fees or costs due and owing to [B&L]," and further granted "the right to retain, in full, out of the amounts finally received by settlement, compromises, judgments, awards, or otherwise, their share of any fees or costs due and owing to [B&L]."[2] The agreement further stated: "If legal action is required to enforce this Agreement or to collect any fees or costs earned or advanced pursuant thereto, the prevailing party shall be entitled to recover any and all costs of such action,

---

[1] The Couveaus also retained a $10,000 deposit paid by Pierson.

[2] The retainer agreement did not advise the Hovanesians that they could seek the advice of independent counsel. (See Cal. Rules of Prof. Conduct, rule 3-300 (rule 3-300) ["A member shall not . . . knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client, unless each of the following requirements has been satisfied: . . . (B) The client is advised in writing that the client may seek the advice of an independent lawyer of the client's choice and is given a reasonable opportunity to seek that advice"]; *Fletcher v. Davis* (2004) 33 Cal.4th 61, 66, 69 [attorney's lien on fund or judgment which the attorney had a hand in recovering, known as a "charging lien," grants attorney "considerable authority to detain all or part of the client's recovery whenever a dispute arises over the lien's existence or its scope" and is, therefore, "an adverse interest within the meaning of rule 3-300 and thus requires the client's informed written consent"].)

including, but not limited to, the expenses and court costs of the action, [and] a reasonable attorney's fee, notwithstanding that [B&L] may represent [itself] . . . ."

After substituting in as attorney of record, appellants drafted and filed two amended complaints. The first added as defendants Pierson's real estate brokers, Ellis Realty and Gary Nicholson, and asserted a new claim for broker negligence. The second added Pierson as a plaintiff. In March 2008, the brokers settled for $40,000 which was deposited in B&L's client trust account.[3] The case proceeded to trial against the Couveaus, who prevailed in a judgment entered May 20, 2008 and were awarded attorneys' fees and costs in the amount of $166,217.25 under a provision in the sales agreement.

Appellants filed a notice of appeal, which listed the Hovanesians as appellants, but not Pierson.[4] The Couveaus thereafter aggressively pursued Pierson to collect their judgment for attorney fees. In January 2011, Pierson paid the Couveaus $168,000 to satisfy their judgment.

B. *Underlying Action*

1. *Complaint and Cross-Complaint*

Pierson and the Hovanesians filed an action against appellants asserting a single claim for professional negligence/legal malpractice. The complaint alleged that appellants were negligent in adding Pierson as a plaintiff to the claim for breach of contract against the Couveaus in the prior action. Specifically, it contended that Pierson had been added solely to trigger the insurance coverage for

---

[3]   In March 2009, B&L applied the $40,000 to amounts allegedly owed under its retainer agreement with the Hovanesians.

[4]   On Pierson's behalf, appellants sought and were denied relief from the omission in the Court of Appeal. Appellants also filed an unsuccessful motion in the trial court seeking to vacate or amend the judgment to delete Pierson.

4

broker negligence provided by the brokers' malpractice insurer and had no rights under the contract after assigning it to the Hovanesians. By adding Pierson as a plaintiff to the breach of contract claim, appellants rendered him potentially (and ultimately) liable for attorney fees awarded the Couveaus when they prevailed in their defense of that claim. The complaint also asserted that appellants were negligent in failing to include Pierson in the notice of appeal filed in the prior action. With respect to the Hovanesians, the complaint alleged that appellants wrongfully withheld the $40,000 paid by the broker defendants in the prior action, and that appellants held no valid lien on the funds.

Appellants answered, asserting as an affirmative defense that respondents were obligated to them for unpaid fees and costs incurred in the prior action, and that appellants were entitled to a set-off against any award. In addition, B&L filed a cross-complaint asserting claims for breach of contract (the retainer agreement), open account, quantum meruit, and declaratory relief against the Hovanesians. In the cause of action for breach of contract, B&L contended that in October 2006, the Hovanesians had entered into an agreement with B&L for the provision of legal services in the Couveau lawsuit. During this representation, the Hovanesians allegedly agreed to add Pierson as a plaintiff in the prior action in order to obtain a recovery from the brokers' insurer, and they also allegedly agreed to pay B&L for the legal services rendered in asserting such claims. B&L alleged that the Hovanesians failed to pay invoices submitted to them. B&L further alleged that the Hovanesians authorized application of the settlement funds to outstanding sums owed B&L for the prior litigation, and that if those funds were not applied, the Hovanesians would owe B&L $45,000 for legal services rendered. The cause of action for open account alleged that an account was stated in writing between B&L and the Hovanesians. The cause of action for quantum meruit alleged that between October 2006 and December 2009, B&L provided legal services for the

5

Hovanesians in the prior action, but the Hovanesians failed to pay B&L fair and reasonable compensation. The cause of action for declaratory relief alleged that the Hovanesians authorized the inclusion of Pierson in the prior action and the use of the settlement funds to pay attorney fees, and that a declaration of the parties' rights and duties was needed. B&L sought recovery of attorney fees expended in pursuing the cross-complaint.

### 2. *Trial and Statement of Decision*

The parties agreed to a court trial. At trial, Pierson contended, and the court found true, that appellants were negligent (1) in failing to include him in the notice of appeal of the Couveaus' judgment; and (2) in amending the underlying complaint against the Couveaus to add Pierson as a plaintiff in the claim for breach of contract, when he had assigned his rights under the contract to the Hovanesians. The court found that this negligence caused Pierson to suffer damages in the initial amount of $166,217.25 -- the attorney fees awarded the Couveaus in their successful defense of the breach of contract claim -- and that Pierson mitigated damages by paying $168,000 to the Couveaus in January 2011, preventing the accumulation of additional interest and attorney fees.

Appellants theorized that the funds to pay the attorney fee judgment to the Couveaus came from the Hovanesians, and that they were acting through Pierson to recover the funds paid. Pierson testified, and the trial court found true, that he had borrowed the money from his brother.[5] The court found "[n]o credible evidence" that the settlement was somehow collusive or conspiratorial, and noted

---

[5] Pierson's brother, broker Gary Nicholson, confirmed that he had lent Pierson the funds to pay the judgment. The Hovanesians testified that they had contributed no money to Pierson.

6

that an attorney who is the subject of a legal malpractice claim cannot reduce the damages recoverable by the plaintiff by asserting contributory negligence or comparative fault.

With respect to the Hovanesians' claim, they contended, and the court found true, that by failing to inform the Hovanesians of their right to seek the advice of independent counsel before signing a retainer agreement containing an attorney lien provision, and by taking funds from the trust account under such lien provision in violation of clear legal authority, appellants committed malpractice. The court concluded that due to the failure to comply with rule 3-300, B&L had no right to assert a lien against the $40,000 settlement from the brokers or to apply it to fees and costs.[6]

With respect to B&L's cross-claims, the court found that the Hovanesians did not owe appellants for Pierson's legal fees and costs, as there was no written fee agreement requiring them to pay these amounts. The court found that the claim for breach of contract for failure to pay fees for services rendered by B&L to the Hovanesians under the October 2006 retainer agreement was "barred because of the violation of . . . rule 3-300 . . . per *Fletcher* [*v. Davis*, *supra*, 33 Cal.4th 61]."

With respect to the open account/account stated claim, the Hovanesians testified to their understanding that the majority of the fees for which they had been billed by appellants had been paid at the time the settlement was received, shortly before the trial against the Couveaus commenced. The court found no evidence that the Hovanesians had been billed by B&L after the trial.[7] The court

---

[6] Both Ani and Donald Hovanesian testified that they understood and were told that the $40,000 would be paid to them, and that they had no discussions with Burlison about applying it toward fees and costs.

[7] At the conclusion of the trial, B&L had attempted to introduce copies of bills allegedly sent to the Hovanesians for legal services rendered during the Couveau trial. *(Fn. continued on next page.)*

7

concluded recovery was precluded on the account stated claim because a creditor cannot collect on such claim unless "'the account be sent to the debtor and he does not object to it within a reasonable time.'" (Quoting *Hedden v. Waldeck* (1937) 9 Cal.2d 631, 639.)

With respect to the quantum meruit claim, the court found no evidence of the amount of time expended, the difficulty involved, or appellants' skill level. To the contrary, the court found that "[g]iven the testimony concerning [Burlison's] lack of skill in both client agreements, mishandling of client funds, improper inclusion of Pierson in a cause of action where he lacked standing, (resulting in the imposition of a judgment against Pierson), and the failure to timely file a notice of appeal as to Pierson, thereby precluding him from challenging the judgment, the facts demonstrate a shocking lack of skill."

Appellants requested a statement of decision explaining the basis for the court's determination. Appellants specifically requested that the court resolve: whether Nicholson was Pierson's agent; whether the $10,000 Pierson deposited into escrow belonged to Nicholson; whether Pierson was being used as a "straw man" in the litigation; whether Pierson demanded that the Hovanesians pay part of the Couveaus' judgment; whether Pierson was advised of the conflict between his

---

The court excluded this evidence, finding that despite respondents' requests, appellants had failed to produce in discovery or at the commencement of the underlying trial any such bills. Appellants do not challenge that ruling on appeal.

The court did permit Appellants to introduce a detailed billing summary which indicated the time spent on the Couveau lawsuit by Burlison and another attorney at the firm on a day-by-day basis and described the specific services rendered. The summary showed that Burlison and the other attorney had spent nearly 200 hours working on activities related to the Couveau litigation, leading to fees of $49,620 calculated at the rate set forth in the retainer agreement, and that costs of $9,733 had also been incurred. The summary indicated the Hovanesians had paid nearly $17,000 to B&L, and that B&L had deducted a portion of the remaining amount allegedly due from the $40,000 settlement, leaving a balance of $2,391.

8

interests and the Hovanesians; whether legal malpractice claims are assignable; whether the Hovanesians and Nicholson acted in collusion in "assign[ing] the malpractice claim to Pierson"; whether the Hovanesians authorized the payment of outstanding invoices from settlement proceeds; whether monthly statements were sent to the Hovanesians; whether the Hovanesians were "joint tortfeasors"; whether Pierson failed to mitigate damages; "how the court calculated, including on what factual basis and what legal basis, any damages it awarded on the complaint and cross-complaint"; and whether "the court weighed, when calculating damages, the responsibility of [the Hovanesians] for payment of the judgment and reduced damages by 2/3 that were owed by them."[8]

Per the court's order, respondents prepared a proposed statement of decision, which essentially tracked the court's original findings as outlined above.[9] The court adopted the statement of decision drafted by respondents. The only objection raised by appellants to the proposed statement of decision pertained to the court's decision to award pre-judgment interest on the $40,000 payable to the Hovanesians. The court overruled the objection and awarded judgment to Pierson in the amount of $168,000, plus prejudgment interest, and to the Hovanesians in the amount of $40,000, plus prejudgment interest. The judgment stated that respondents were awarded "costs," leaving the amount blank. On November 1, 2012, appellants noticed an appeal of the "[j]udgment after court trial."

---

[8]    There were 29 separate "issues" listed in appellants' request for a statement of decision. The above are the specific issues cited in the opening brief as pertinent to this appeal.

[9]    The statement of decision added a new finding, that "[w]hether Pierson borrowed the funds to pay the judgment against him for which he was jointly and severally liable or whether Pierson paid his own funds is irrelevant and immaterial."

9

### 3. *Motion for Attorney Fees*

On November 5, 2012, the Hovanesians filed a motion for recovery of contractual attorney fees under the October 2006 retainer agreement and Civil Code section 1717, seeking an award of $35,720 jointly and severally against Burlison and B&L. Appellants opposed, contending the retainer agreement was incapable of supporting an attorney fee award because the court had essentially found it void. Appellants also pointed out that B&L was the only party to the retainer agreement and the sole named plaintiff in the cross-complaint. The court awarded $21,432 in fees to the Hovanesians, payable by B&L only. The court concluded that although "the lien provision in the retainer agreement . . . was unenforceable because [B&L] violated . . . Rule 3-300 . . . [t]his d[id] not mean . . . that the entire retainer agreement was void for illegality." No appeal was taken from the post-judgment attorney fee order.[10]

---

[10] Because the judgment did not establish the Hovanesians' entitlement to attorney fees (both the entitlement to attorney fees and the amount were determined in a post-judgment order) appeal of the judgment did not confer jurisdiction to review the attorney fee award. (*DeZerega v. Meggs* (2000) 83 Cal.App.4th 28, 43 [appellate court lacked jurisdiction to consider issues pertaining to attorney fee award where judgment from which appeal was taken stated prevailing party was entitled to "'costs,'" but order establishing entitlement to attorney fees was made after entry of judgment and was not separately appealed].) Moreover, as explained below, the invalid lien provision did not render the entire retainer agreement void; accordingly, the court was authorized to enforce the attorney fee provision.

10

## DISCUSSION

### A. *Statement of Decision*

Under Code of Civil Procedure section 632, upon the request of any party, the court "shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial." "The trial court has a mandatory duty to provide a statement of decision when properly requested." (*Espinoza v. Calva* (2008) 169 Cal.App.4th 1393, 1397; see Cal. Rules of Court, rule 3.1590(f).) Here, appellants requested a statement of decision, and the court provided one. The issue raised on appeal is whether the statement of decision was adequate. We conclude that any objection to its content was waived and that, in any event, the statement of decision was not deficient.

"[I]t is settled that the trial court need not, in a statement to decision, 'address all the legal and factual issues raised by the parties.'" [Citation.] It 'is required only to set out ultimate findings rather than evidentiary ones.'" (*Yield Dynamics, Inc. v. TEA Systems Corp*. (2007) 154 Cal.App.4th 547, 559, quoting *Muzquiz v. City of Emeryville* (2000) 79 Cal.App.4th 1106, 1124-1125.) """[U]ltimate fact[]"'. . . in general . . . refers to a core fact, such as an element of a claim or defense, without which the claim or defense must fail. [Citation.] It is distinguished conceptually from 'evidentiary facts' and 'conclusions of law.' [Citation.]" (*Yield Dynamics, Inc. v. TEA Systems Corp*., *supra*, at p. 559.) The court is not required to "make a list of findings on evidentiary facts on issues not controverted by the pleadings" or to provide specific answers to every question "so long as the findings in the statement of decision fairly disclose the court's determination of all material issues." (*People v. Casa Blanca Convalescent Homes, Inc*. (1984) 159 Cal.App.3d 509, 525, overruled in part on other grounds in *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* (1999) 20 Cal.4th 163; accord, *Golden Eagle Ins. Co. v. Foremost Ins. Co*. (1993) 20

11

Cal.App.4th 1372, 1379-1380 [statement of decision sufficient if it "fairly discloses the court's determination as to the ultimate facts and material issues in the case"].) Furthermore, a party waives any defect in the statement of decision by failing to file timely objections to a proposed statement of decision or otherwise bring deficiencies to the trial court's attention. (*Golden Eagle Ins. Co. v. Foremost Ins. Co.*, *supra*, at p. 1380.)

Appellants asked the court to address 29 issues and contend on appeal that 13 of the issues were not addressed. Appellants waived any defect in the court's statement of decision by failing to file timely objections based on the issues they now claim were unaddressed. (*Golden Eagle Ins. Co. v. Foremost Ins. Co.*, *supra*, 20 Cal.App.4th at p. 1380; see California Rules of Court, rule 3.1590(g) ["Any party may, within 15 days after the proposed statement of decision and judgment have been served, serve and file objections to the proposed statement of decision or judgment."].) "By filing specific objections to the court's statement of decision a party pinpoints alleged deficiencies in the statement and allows the court to focus on the facts or issues the party contends were not resolved or whose resolution is ambiguous." (*Golden Eagle Ins. Co. v. Foremost Ins. Co.*, *supra*, at p. 1380.) The sole objection to the proposed statement raised by appellants was the court's decision to award prejudgment interest to the Hovanesians. Accordingly, they have waived any right to complain regarding the adequacy of the statement of decision in addressing the issues specified in their brief on appeal.

Moreover, were we to reach the merits, we would find no basis for remand. Many of the issues set forth in the opening brief -- whether the Hovanesians authorized the payment of outstanding invoices from settlement proceeds, whether they received monthly statements, whether Pierson and the Hovenesians were acting in collusion, whether Pierson was being used as a "straw man" for the Hovanesians, and whether Pierson mitigated damages -- were specifically

addressed in the statement of decision. The answer to others -- how the court calculated damages and whether the court reduced the judgment to Pierson by an amount representing the Hovanesians share of the prior judgment -- was self-evident. The remaining issues appellants claim were inadequately addressed in the statement of decision -- whether Nicholson was Pierson's agent, whether the $10,000 Pierson deposited into escrow belonged to Nicholson, whether Pierson demanded that the Hovanesians pay part of the Couveau judgment, whether Pierson was advised of the conflict between his interest and the Hovanesians, whether the Hovanesians were joint tortfeasors, and whether legal malpractice claims are assignable -- were irrelevant to the matters at issue in the underlying litigation. In short, there is no basis for appellant's assertion that the statement of decision was inadequate or deficient.

B. *Mitigation*

Appellants assert that whether Pierson demanded that the Hovanesians pay the Couveaus' judgment or any portion thereof was relevant to whether he "mitigate[d] . . . damage[s]." Appellants contend that the Hovanesians were primarily responsible for paying the Couveaus' attorney fees judgment because they were assignees of all Pierson's rights under the 2006 sales contract and were parties to a retainer agreement with B&L under which they purportedly agreed to pay Pierson's litigation fees and costs.[11] In appellants' view, by taking full

---

[11]     We note that the trial court found that the Hovanesians had no obligation to pay Pierson's legal fees and costs as they had signed no written fee agreement calling for them to do so. At trial, both Donald and Ani Hovanesian testified they had no discussions with Burlison about being responsible for Pierson's fees and costs. Appellants claimed to have sent Pierson's *brother* a written retainer agreement explaining that Pierson's fees and costs would be paid by the Hovanesians. There was no evidence
*(Fn. continued on next page.)*

13

responsibility for paying the attorney fee judgment and seeking recovery of 100 percent of his $168,000 payment to the Couveaus from appellants, Pierson effectively assigned the benefit of his legal malpractice claim to the Hovanesians in violation of public policy. (See *Goodley v. Wank & Wank* (1976) 62 Cal.App.3d 389, 397 [assignment of chose in action for legal malpractice contrary to public policy].) Neither mitigation nor assignment of a legal malpractice claim are at issue here. Properly stated, the issue is whether Pierson was obligated to pursue in the underlying litigation all of the parties potentially liable for reimbursing him for his payment to the Couveaus. We conclude he was not.

There is no dispute that Pierson suffered a judgment rendering him jointly and severally liable, along with the Hovanesians, to pay the attorney fees incurred by the Couveaus in the prior litigation. The Couveaus were within their rights in pursuing Pierson to recover the entire judgment. Where multiple parties are legally responsible for a plaintiff's losses, he or she may chose where to impose liability, subject to a claim by the chosen defendant for contribution or indemnity from the other potentially liable parties. (*Atchison, T. & S. F. Ry. Co. v. Lan Franco* (1968) 267 Cal.App.2d 881, 884-885; cf. *Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1295, fn. 5 [party covered by multiple insurance policies may obtain recovery from any one for entire loss].) It is true that Pierson might have sought at least partial reimbursement from the Hovanesians. (See Code Civ. Proc., § 882 [judgment debtor who has satisfied more than his or her "due proportion" of judgment may compel contribution from other judgment debtors]; *Young v. Rosenthal* (1989) 212 Cal.App.3d 96, 130 [when there is no

that the agreement was ever signed and returned. At trial, Pierson testified he had never seen the letter.

apportionment made by judgment or dictated by terms of agreement or instrument, "'due proportion'" calculated on pro rata basis].)  It is equally true, however, that appellants' negligence in including Pierson as a party to the contract action against the Couveaus was a proximate cause of Pierson's loss and rendered appellants liable to Pierson on a theory of attorney malpractice.  Appellants cite no authority for the proposition that Pierson was required to seek contribution from the Hovanesians prior to pursuing the lawyer who caused his loss.

Here, the trial court reasonably found that appellants' negligence and legal malpractice caused Pierson to suffer a money judgment in the amount of $166,217.25 on which interest was accruing, and that Pierson mitigated damages by paying the Couveaus $168,000 in January 2011.  Accordingly, the court properly awarded judgment against appellants in favor of Pierson in the amount of $168,000.  That the Hovanesians might have been liable to Pierson for all or part of the judgment under a different theory is not a defense to Pierson's legal malpractice action against appellants or a basis for reducing the damages he incurred.

C. *B&L's Breach of Contract Claim*

As noted, rule 3-300 forbids members of the bar from "enter[ing] into a business transaction with a client; or knowingly acquir[ing] an ownership, possessory, security, or other pecuniary interest adverse to a client, unless . . . [t]he client is advised in writing that the client may seek the advice of an independent lawyer of the client's choice and is given a reasonable opportunity to seek that advice."  In *Fletcher v. Davis*, *supra*, 33 Cal.4th 61, the Supreme Court held that the rule applies to a contract creating an attorney's lien on an award recovered by the attorney's efforts (referred to as a "charging lien").  (*Id*. at pp. 66, 68-69.)  The Court there held that a charging lien obtained in violation of rule 3-300 could not

be enforced. (*Fletcher v. Davis*, at p. 72.) It did not, however, hold that noncompliance with the rule invalidates the underlying fee agreement or precludes an attorney from recovering the specified contractual fee. In fact, courts have repeatedly determined that fee provisions in retainer agreements are enforceable despite the invalidity of a lien provision. (See, e.g., *Shopoff & Cavallo LLP v. Hyon* (2008) 167 Cal.App.4th 1489, 1523 [upholding attorney's recovery of contractual contingency fee despite presence of arguably invalid charging lien]; *Yagman v. Galipo* (C.D. Cal., Mar. 25, 2013, CV 12-7908-GW(SHx)) [2013 U.S. Dist. LEXIS 120497 *18-19, 30-31 [claim for breach of retainer contract survived although contractual lien was unenforceable]; see *Fair v. Bakhtiari* (2011) 195 Cal.App.4th 1135, 1165-1166 [observing that "in *Shopoff*, as in *Fletcher*, the underlying fee agreement was preserved" and "[o]nly the charging lien was voided," as the charging lien "was easily severed from the agreement as a whole"]; *McIntosh v. Mills* (2004) 121 Cal.App.4th 333, 347 ["[T]he need to void contracts in violation of the law must be tempered by the countervailing public interest in preventing a contracting party from using the doctrine to create an unfair windfall."].)

In ruling on B&L's breach of contract claim, the court did not state that it found the October 2006 retainer agreement void.[12] However, it provided no reason for rejecting B&L's breach of contract claim other than the violation of rule 3-300. As the above authorities make clear, a violation of this rule has no effect on the attorney's right to his or her contractual fee. (See also *Pringle v. La Chapelle* (1999) 73 Cal.App.4th 1000, 1006 [for violation of ethical rule to lead to forfeiture

---

[12] We note that in granting the Hovanesians' motion for attorney fees, the court necessarily rejected appellants' contention that "the attorney fee provision [in the October 2006 retainer agreement] is unenforceable because the Court found that the contract was void pursuant to Rules of Professional Conduct Rule 3-300."

16

of attorney's right to recover fees, violation must be "serious," and involve ""''"
[f]raud or unfairness[,] . . . acts in violation or excess of authority, . . . acts of
impropriety inconsistent with the character of the profession, and incompatible
with the faithful discharge of [his or her] duties,"''" or "irreconcilable conflict"].)

Respondents suggest that there was no evidence to support the contractual
attorney fee claim, noting that the court excluded monthly bills purportedly sent to
the Hovanesians and contending that B&L "offered no specific evidence as to the
amount of time expended, the difficulty involved, or [Burlison's] skill level."
Certain billing statements were excluded as a sanction for failure to produce them
during discovery or during pre-trial proceedings. However, the court permitted
appellants to introduce a document summarizing the total amount of time expended
on the Couveau litigation by Burlison and another attorney at B&L and providing a
description of the activities on which the attorney time was expended. The
summary also described the costs incurred by the firm on the Hovanesians' behalf
during the representation. This evidence was sufficient, if credited, to support
B&L's breach of contract claim.[13] "[T]here is no legal requirement that an
attorney supply billing statements to support a claim for attorney fees."
(*Mardirossian & Associates, Inc. v. Ersoff* (2007) 153 Cal.App.4th 257, 269;
accord, *Steiny & Co. v. California Electric Supply Co.* (2000) 79 Cal.App.4th 285,
293.)[14] Moreover, the absence of specific evidence concerning the attorneys' skill

---

[13]    The court's statement of decision did not address the billing summary or make any
finding regarding the reliability of the information it contained.

[14]    Indeed, courts have held that an attorney may recover fees based on oral testimony
estimating the number of hours worked, despite the failure to maintain any
contemporaneous time records. (*Steiny & Co. v. California Electric Supply Co.*, *supra*,
79 Cal.App.4th at p. 293 ["An attorney's testimony as to the number of hours worked is
sufficient evidence to support an award of attorney fees, even in the absence of detailed
time records."]; *Martino v. Denevi* (1986) 182 Cal.App.3d 553, 559 ["In California, an
*(Fn. continued on next page.)*

level or the difficulty of the case is irrelevant to B&L's breach of contract claim. As the court explained in *Berk v. Twentynine Palms Ranchos, Inc*. (1962) 201 Cal.App.2d 625, 637: "Usually the mode and measure of an attorney's compensation for services rendered to a client is a matter for contractual agreement between them." (*Tracy v. Ringole* (1927) 87 Cal.App. 549, 551; Code Civ. Proc., § 1021.)  Where the attorney and the client each have the capacity to contract, and the fee is fixed or determined by their contract, such determination is generally binding on both parties.  (*Cole v. Superior Court* (1883) 63 Cal. 86.)  The client cannot escape full payment merely because the attorney's services proved to be less valuable than the parties had in mind when they entered into the contract. (*Reynolds v. Sorosis Fruit Co*. (1901) 133 Cal. 625, 630.)  "An attorney suing upon a contract for an agreed fee is not required to prove the reasonable value of his services."  (*Berk, supra,* 201 Cal.App.2d at p. 637; see *MacInnis v. Pope* (1955) 134 Cal.App.2d 528, 530 [finding no reason to consider "'reasonable value'" where "[p]laintiff [attorney] sued on a written contract fully performed"; "when an attorney fully performs the services required by the contract he is entitled to the fee stipulated in the contract"].)

Our review of the record below indicates that the Hovanesians presented no defense to B&L's breach of contract claim for legal services rendered under the October 2006 retainer agreement, other than the failure to comply with rule 3-300. Failure to comply with the rule voided any purported lien but did not void the Hovanesians' obligation to pay for legal services rendered under the agreement.

---

attorney need not submit contemporaneous time records in order to recover attorney fees . . . .  Testimony of an attorney as to the number of hours worked on a particular case is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records."].)

Remand is required for the court to determine the amount due B&L under the agreement and the evidence presented at trial.

## DISPOSITION

The judgment is reversed with respect to B&L's claim for breach of contract. The matter is remanded for determination of the amount of compensation owed by the Hovanesians to B&L under the October 2006 retainer agreement. In all other respects, the judgment is affirmed. Each party is to bear his, her or its own costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, J.

We concur:

EPSTEIN, P.J.

EDMON, J.*

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.